Joseph A. LIGUORI, Plaintiff,

v.

**Clifford ALEXANDER, as Secretary of the Army, Lt. General Andrew J. Goodpaster, as Superintendent of the United States Military Academy at West Point, New York, Maj. Henry Glisson, Individually and as Officer in Charge of the Cadet Mess, United States Military Academy at West Point, New York, Arthur Reimers, Individually and as Chief Personnel Officer at the United States Military Academy at West Point, New York, Michael Heller, Individually and as Director of Management-Employee Relations, Office of Civilian Personnel, United States Military Academy at West Point, the Department of the Army, and the United States Civil Service Commission, Defendants.**

No. 79 Civ. 0524.

United States District Court,
S. D. New York.

July 23, 1980.

---

Leona Freisinger, Warwick, N. Y., for plaintiff.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for defendants; Harvey J. Wolkoff, Asst. U. S. Atty., New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Joseph Liguori, a Cook Foreman at the United States Military Academy at West

Point ("USMA") brings this suit to challenge certain personnel actions taken by officials of USMA, the Department of the Army ("DA"), and the United States Civil Service Commission ("CSC") that affected him adversely.

The complaint seeks in four separate counts: (1) judicial review of the finding of a CSC appeals officer that plaintiff's rights were not violated by a reorganization at USMA; (2) review of the refusal of the CSC Appeals and Review Board ("ARB") to reopen and reconsider that determination by the appeals officer; (3) amendment of his personnel records maintained by USMA pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a; and (4) damages from 3 defendants for false and defamatory statements made by them and included in his personnel files.

Defendants have moved for summary judgment as to the first two claims and for dismissal of the third and fourth claims. For the reasons that follow, these motions are denied.

*Facts*

Plaintiff was hired in January, 1975, as Superintendent (Food Preparation) of the Cadet Mess at USMA, a position rated at grade level WS–15 in the competitive civil service. In March, 1977, he was notified that his position was to be abolished as a result of a reduction-in-force ("RIF") incident to a reorganization of the Mess and that he could assume a new position as Cook General Foreman, rated as a WS–11 and paying a lower wage than he had formerly received. In this new position, plaintiff would report to one Edward Ramus, a Food Preparation General Foreman, rated WS–12, who had previously been plaintiff's supervisee. The reorganization and the change in plaintiff's position was the culmination of a complex history of USMA management efforts to reorganize the Mess, the details of which need not be recounted here. Suffice it to say that plaintiff had been at least partially aware, before the official notification, that some reallocation of duties would occur. The ultimate outcome of the reorganization as it affected his position, however, was a surprise to him. He interpreted the change in rank as a demotion engineered by certain USMA officials due to malice toward him and in retaliation for changes he had made in the Mess since his arrival. Plaintiff accepted the position of Cook General Foreman under protest.

On March 15, 1977, plaintiff filed an appeal with the New York Field Office of the Federal Employee Appeals Authority ("FEAA") of the CSC.[1] Because the change in plaintiff's position was characterized by USMA officials as the result of a reduction-in-force, CSC determined that no hearing was statutorily required.[2] Nevertheless, in its discretion, CSC granted plaintiff a "personal appearance" before an FEAA hearing officer.[3] Both plaintiff and

---

1. The FEAA, now denominated the Merit Systems Protection Board, had authority, at the times relevant to this opinion, to make final decisions on appeals to the CSC after reviewing actions against civil service employees. 5 C.F.R. Part 752 § 772.101, § 772.301 (1978) [All references in this opinion to the C.F.R. are to the 1978 edition].

2. According to the regulations in force at that time, a competing civil service employee was entitled to a hearing only for appeals of "adverse actions" by an agency or by the Civil Service or for appeals on disability retirement. 5 C.F.R. § 772.307. "Adverse actions" by an agency include removals, suspensions, furloughs without pay, and reduction in rank or pay, 5 C.F.R. § 752.101, but not reduction-in-force actions taken under 5 C.F.R. Part 351. 5 C.F.R. § 752.103(b)(3).

3. Chapter 3–2–i of the Federal Personnel Manual provides that the FEAA "office responsible for adjudicating an appeal in which there is no right to a hearing may grant the parties an opportunity for a personal appearance. . . ."

It is unclear how a hearing differs from a personal appearance, although the latter appears to be more informal. By letter of June 23, 1977, John Selbmann, Chief Appeals Officer of FEAA's New York office notified Liguori that he would be granted a personal appearance. The letter stated:

A personal appearance is generally informal and although an occasional "witness" may be allowed, statements are not normally made under oath. The proceedings may be characterized as a discussion of the issues. A verbatim transcript of the record will be made. Administrative Record [hereinafter AR] at 633.

USMA submitted various letters and documents to the FEAA prior to the appearance. At the August 17, 1977 appearance plaintiff was accompanied by a co-worker at the Mess; USMA was represented by an attorney and a civilian personnel official. The parties were given an opportunity to explain their positions and to submit documentation. USMA's position was that the change in plaintiff's rank was the necessary result of applying applicable RIF regulations to the constellation of positions existing after the planned reorganization was approved. Plaintiff argued that the RIF had been a guise for his demotion, that he was the only employee adversely affected by the RIF, and that the reorganization which had been effected was not the same as that officially approved by USMA management.

On October 13, 1977, the FEAA Appeals Officer issued his decision. He found that plaintiff did not contest "the bonafides of the reorganization," that USMA's actions resulted from valid application of the RIF regulations, and that plaintiff's rights under those regulations had not been violated. In regard to plaintiff's claim of a vendetta against him, the Appeals Officer found that the reorganization plan and its results had been approved prior to the time when plaintiff began to have problems with the officer in charge of the Mess, defendant Arthur Reimers.

In June, 1978, plaintiff sought review of the FEAA decision from the ARB. This request was denied on the ground of untimeliness.[4]

*The First and Second Counts*

The complaint alleges in its first count that the FEAA decision was erroneous in that the Appeals Officer failed to consider plaintiff's claim that the alleged RIF was a mere sham to disguise his demotion, and that no RIF had in fact occurred. The second count alleges that the ARB denial of review was arbitrary and capricious. Defendants' summary judgment motion, treating these two claims as identical, contends that the FEAA decision must be upheld on the basis of the administrative record, and that judicial review is limited to deciding whether the CSC decision was arbitrary, capricious, or otherwise not in accordance with the law. They argue at length that the substantial evidence standard is inapplicable, because the "personal appearance" was not a hearing required by law. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

■ I do not reach the question whether the CSC decisions met the applicable standard of judicial review, however, because the administrative record supplied by defendants is unreviewable under any standard.

■ A district court reviewing the decision of an agency is confined to an examination of the record that was before the administrator and on which he based his decision. *See Schicke v. Romney*, 474 F.2d 309 (2d Cir. 1973). In this case, however, the court cannot determine what record was before the FEAA. The decision of the Appeals Officer does not list the evidence he considered or relied on to reach his decision.[5] Obviously, he considered the testimo-

4. There is no right of review of a decision of the FEAA Appeals Officer. 5 C.F.R. § 722.309(b). However, a party may request the ARB to reopen and reconsider such a decision. 5 C.F.R. § 772.310(a).
  The October 13, 1977 decision of the FEAA Appeals Officer stated that Liguori could request reconsideration of the decision by ARB if he submitted information meeting the criteria set out in 5 C.F.R. § 772.310 "within a reasonable time after receipt of this decision" (AR at 585). The letter did not define "reasonable time." After plaintiff requested reconsideration by letter of June 21, 1978, ARB refused to reopen the decision on the ground that the request had not been timely under the circumstances (AR at 97).
  Defendants cite no statutory authority for a time limitation on requests by employees for reconsideration. 5 C.F.R. § 772.310 sets a limitation only for such requests by agencies.

5. 5 C.F.R. § 772.309 requires the decision of an Appeals Officer to contain an analysis of the evidence. The decision at issue here, however, does not describe the evidence or specify which evidence supported the various findings. Instead, the section headed "Analysis and Find-

ny adduced at the personal appearance, as well as documents submitted by the parties in advance. But it is unclear what those documents were. Defendants' memorandum in support of the motion (hereinafter Defendants' Memo) states that the record before the officer consisted of 4 letters submitted by the parties as well as "various other letters, memoranda and other materials. . . ." (Defendants' Memo at 6). Defendants identify the pages in the administrative record at which these letters begin, but not where they end. (Defendants' Memo at 5–6). In addition, some of the letters refer to enclosures but the enclosures do not seem to follow the letters in identifiable order. The "various other materials" submitted by the plaintiff are not identified. The transcript of the appearance also includes vague references to documents discussed at the hearing and circulated among the parties and the Appeals Officer, e.g., Tr. at 6, 7, 9–15, 20, 23, 29–30, 33, but these documents are not identified for the court.

Moreover, the transcript of the appearance is, in large part, incoherent. Sentences appear with significant omissions. *E.g.,* Tr. at 3 ("The rest personnel anybody could . . . . . . promoted."); Tr. at 62 ("Even Col. Silvers and my . . . grievance.") Other sentences are sheer nonsense. *E.g.,* Tr. at 25 ("They said that the Department of Research took ransom?"); Tr. at 54 ("We stated in the format that Mr. Liguori job description in reduction in force was over a towel.") Key persons in the dispute are referred by various names and spellings so that it is unclear who was being discussed. For example, two key characters in the dispute, Reimers and Ramus, are both referred to as "Rames," or "Ramis." *E.g.,*

Tr. at 39, 40, 52, 61, 63, 65, 68, 70. Other references to a "Ryan," Tr. at 41, and a "Riners," Tr. at 57, may refer to Reimers or Ramus or a third individual. Finally, the administrative record is totally unorganized. It consists of some 974 pages of material which seems to include documents submitted to the FEAA, to the ARB, and others whose relevance to the proceedings is unclear. These documents are not indexed or chronologically ordered.

Due to the incoherence of the transcript and the disorganization of the record, it is impossible to determine exactly what evidence was before the FEAA Appeals Officer when he made his decision, or whether the record provides any support for his findings. Therefore, defendants' summary judgment motion must be denied without prejudice to its renewal on a clarified record. Defendants may file their motion again after they have submitted a record which clearly separates, orders, and identifies the evidence before the FEAA Appeals Officer, and the separate evidence submitted to the ARB. The documents before the FEAA should be separated into material submitted in advance, and material submitted at the hearing. Each document that refers to enclosures should have those enclosures marked and attached in order. An index to these documents should be supplied. In addition, the transcript should be resubmitted after the CSC has corrected it so that it reflects what was actually said at the appearance.

*The Privacy Act Claim*

Plaintiff's third claim is brought under the Privacy Act of 1974, 5 U.S.C. § 552a(g) [6] to amend and correct his person-

---

ings" refers to "the record" and "the evidence" in general (AR at 596–97).

**6.** 5 U.S.C. § 552a(g)(1) provides:

(g)(1) Civil remedies.—Whenever any agency

(A) makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection;

(B) refuses to comply with an individual request under subsection (d)(1) of this section;

(C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or

nel records and certain investigative reports purportedly maintained by USMA. Defendants have moved to dismiss this count due to plaintiff's failure to exhaust the administrative prerequisites to a Privacy Act suit as set forth in 5 U.S.C. § 552a(d) [7] and regulations promulgated thereunder.[8]

Plaintiff makes two meritorious arguments: that he correctly instituted a Privacy Act suit and, in the alternative, that the government should be estopped from denying that he followed correct procedures. The parties agree that plaintiff orally asked Major Glisson, the custodian of his personnel records, to delete certain portions of his employee record card. Plaintiff urges that this amounted to a request for amendment of his records within 5 U.S.C. § 552a(d)(2) [9]. Defendants concede both that Liguori requested that certain entries on his card be removed, and that a deletion is an amendment,[10] but argue that plaintiff did not request an amendment. Further, while admitting that Glisson declined to amend plaintiff's card (Defendants' Memo at 35), defendants argue that the agency never made a determination not to amend the records in question (Defendants' Memo at

31–32). This line of argument is pure sophistry; whatever distinctions defendants are attempting to draw are lost on the court. By defendants' own statements, it appears that plaintiff orally requested that Glisson amend his records and Glisson refused to do so. 5 U.S.C. § 552a(d)(2) provides that within 10 days of such a request, the agency must acknowledge the request in writing, and either correct the records or inform the individual of the agency's refusal, the reasons therefor, and the appropriate procedures for obtaining agency review of the refusal. USMA remained silent and failed to inform Liguori of the procedures to follow for agency review. Furthermore, on January 26, 1977, Liguori met with defendant Heller, Chief of the Management-Employee Relations of the Civilian Personnel Division at USMA. At this session, Liguori complained, *inter alia*, of at least one entry on his employee record card. Heller advised plaintiff to pursue DA grievance procedures, and gave him a manual setting forth the steps to follow. Liguori followed this recommendation and pursued a three-step grievance procedure which culminated in a determination by U. S. Army

> (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,
> the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

**7.** 5 U.S.C. § 522a(d) provides in pertinent part:
> (d) Access to records.—Each agency that maintains a system of records shall—
> (2) permit the individual to request amendment of a record pertaining to him and—
> (A) not later than 10 days (excluding Saturdays, Sundays, and legal public holidays) after the date of receipt of such request, acknowledge in writing such receipt; and
> (B) promptly, either—
> (i) make any correction of any portion thereof which the individual believes is not accurate, relevant, timely or complete; or
> (ii) inform the individual of its refusal to amend the record in accordance with his request, the reason for the refusal, the procedures established by the agency for the individual to request a review of that refusal by the head of the agency or an officer designat-

> ed by the head of the agency, and the name and business address of that official;
> (3) Permit the individual who disagrees with the refusal of the agency to amend his record to request a review of such refusal, and not later than 30 days (excluding Saturdays, Sundays, and legal public holidays) from the date on which the individual requests such review, complete such review and make a final determination unless, for good cause shown, the head of the agency extends such 30–day period; and if, after his review, the reviewing official also refuses to amend the record in accordance with the request, permit the individual to file with the agency a concise statement setting forth the reasons for his disagreement with the refusal of the agency, and notify the individual of the provisions for judicial review of the reviewing official's determination under subsection (g)(1)(A) of this section;

**8.** See 5 C.F.R. Parts 293 through 297 (1978).

**9.** 5 C.F.R. § 297.111 provides that a request for correction or amendment of a record may be made in person.

**10.** See 5 C.F.R. § 297.102(b)(5).

Civilian Appellate Review Agency ("USA-CARA") as to the legitimacy and accuracy of the records. During or as a result of the USACARA investigation, some minor corrections were made in plaintiff's records.

In these circumstances, the complaint should not be dismissed for failure to exhaust administrative remedies. First, plaintiff initiated a Privacy Act request under 5 U.S.C. § 552a(d) and the agency failed to fulfill its statutory duty in response. *See Harper v. Kobelinski*, 589 F.2d 721 (D.C. Cir. 1978). Second, plaintiff pursued the grievance process which defendants now argue was incorrect in reliance on and at the express direction of Major Heller. In such circumstances, the agency can be estopped to deny that plaintiff followed correct procedures. *Hanson v. Harris*, 619 F.2d 942, 947–49 (2d Cir. 1980). Third, this is not a case where plaintiff, by failing to pursue any administrative procedures, deprived the agency of all opportunity to amend the records prior to court review. Here plaintiff has fully exhausted the grievance route. It would be wasteful and probably futile to require him to begin anew at the agency level when another arm of the agency has already determined the issues raised here adversely to him. On these facts, I hold that plaintiff has exhausted all the administrative procedures necessary.

*The Defamation Claim*

■ Plaintiff's fourth cause of action is for defamation and is asserted against defendants Glisson, Reimers and Heller in their individual capacities. Since only Heller was personally served at the time this motion was made, however, this discussion concerns only his personal liability. Defendants did not raise the question of subject matter jurisdiction over this claim; I presume for these purposes that pendent jurisdiction exists due to the fact that plaintiff's Privacy Act claim and his defamation claim arise from a common nucleus of operative fact. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

The complaint alleges that Glisson intentionally and wilfully created and main-tained false and defamatory material in plaintiff's personnel records, and that Reimers and Heller assisted him as part of a malicious scheme to discredit plaintiff and injure his reputation.

Heller has moved to dismiss the complaint on two grounds: failure to plead the alleged defamatory statements *in haec verba*, and Heller's official immunity.

■ The question whether a defamation complaint must be dismissed for failure to set forth the alleged defamatory statements with particularity is not as clear-cut as defendant assumes. Earlier decisions in this circuit, *e. g., Foltz v. Moore McCormack Lines, Inc.*, 189 F.2d 537 (2d Cir.), *cert. denied*, 342 U.S. 871, 72 S.Ct. 106, 96 L.Ed. 655 (1951) and *Simpson v. Oil Transfer Corp.*, 75 F.Supp. 819, 822 (N.D.N.Y.1948), which indicated that such particularity was required, were based, in part, on the assumption that state pleading requirements controlled in diversity cases. However, at least since *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), it has been clear that Rule 8(a), F.R.Civ.P., requiring a short and plain statement of the claim for relief, and not state law, controls the form of pleading state law claims in federal court. *See* 5 Wright, Miller & Cooper, Federal Practice and Procedure § 1245.

Since *Hanna*, the Court of Appeals has not addressed the question of the specificity required of defamation complaints, and the lower courts in this circuit have differed on whether defamatory statements need be set forth *in haec verba*. *Compare Pirre v. Printing Developments, Inc.*, 432 F.Supp. 840, 843 (S.D.N.Y.1977) (Knapp, J.) *with Drummond v. Spero*, 350 F.Supp. 844, 845 (D.Vt.1972).

■ What is clear, however, is that the allegations of the complaint must afford defendant sufficient notice of the communications complained of to enable him to defend himself. *See Pirre v. Printing Developments, Inc., supra*, 432 F.Supp. at 843; *Mueller v. Rayon Consultants, Inc.*, 170 F.Supp. 555, 557–58 (S.D.N.Y.1959) (Dawson, J.).

**648**

In view of the past history of the parties' numerous confrontations involving plaintiff's personnel file, I view with some skepticism defendant's claim that he cannot fathom which material in those files are alleged to be defamatory. Nevertheless, the complaint does fail to refer to those statements with any specificity. Plaintiff has indicated willingness to amend the complaint in this respect. Therefore, plaintiff will be granted 30 days from the date that notice of this decision is printed in the New York Law Journal to amend the complaint to set forth the allegedly defamatory statements *in haec verba.*

■ Defendant's motion to dismiss this claim is also grounded on Heller's official immunity. A federal officer is absolutely immune from liability for tortious conduct that falls short of a constitutional violation when he acts within the outer limits of his official authority and when the action is discretionary. *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); (defamation); *Sami v. United States,* 617 F.2d 755 (D.C. Cir. 1979) (defamation); *Expeditions Unlimited Aquatic Enterprises v. Smithsonian Institution,* 566 F.2d 289 (D.C. Cir. 1977) (en banc), *cert. denied,* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978) (defamation); *Huntington Towers, Ltd. v. Franklin National Bank,* 559 F.2d 863, 870 (2d Cir. 1977), *cert. denied,* 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978); *Ove Gustavsson Contracting Co. v. Floete,* 299 F.2d 655, 658 (2d Cir. 1962), *cert. denied,* 374 U.S. 827, 83 S.Ct. 1862, 10 L.Ed.2d 1050 (1963).[11] This rule remained unaffected by *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), which held that only qualified immunity attaches to a federal employee who commits a constitutional tort.

In order to clothe Heller with absolute immunity, then, his actions must be determined to fall within the outer limits of his authority as Chief of the Management-Employee Relations Division. Reading the complaint as challenging only Heller's con-

duct during the session with plaintiff about his employee record card, *see supra,* defendant maintains that Heller's conduct fell within the scope of those duties, which included concerning himself with employee problems and inter-employee relations.

The complaint, however, though not specific as to the defamatory statements, does assert that Heller "assisted [Glisson] in maintaining, compiling, back-dating and otherwise falsifying" plaintiff's personnel records. To the extent that this allegation refers to Heller's conduct beyond the consultation session discussed above, it challenges conduct that did not clearly lie within the scope of Heller's duties, especially in light of defendant's assertions that Heller was not the person responsible for maintaining plaintiff's personnel records, and that Glisson was the custodian of plaintiff's records (Defendants' Memo at 35, 39, 50). Plaintiff claims that Heller's duties did not encompass the actions complained of.

Because a factual dispute exists as to whether Heller's allegedly tortious conduct fell within the scope of his authority, dismissal based on official immunity is inappropriate at this point. This question can be determined only after further factual development. *See Expeditions Unlimited Aquatic Enterprises v. Smithsonian Institution, supra,* 566 F.2d at 291 & n.3.

In conclusion, defendants' summary judgment motion, directed to the first two counts, is denied due to the present condition of the administrative record. The motion to dismiss is denied as well, but plaintiff is directed to amend the complaint to state the alleged defamatory statements *in haec verba* within 30 days from the date of this decision.

IT IS SO ORDERED.

---

11. The extent of the official immunity of a federal employee charged with tortious conduct is a question governed by federal law, even when the cause of action arises under state law. *Howard v. Lyons,* 360 U.S. 593, 597, 79 S.Ct. 1331, 1333, 3 L.Ed.2d 1454 (1959); *Dacey v. Dorsey,* 568 F.2d 275, 278 (2d Cir.), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2238, 56 L.Ed.2d 405 (1978).