**KOEPPEL & KOEPPEL and Tenth City Associates, Plaintiffs,**

v.

**The FEDERAL REPUBLIC OF NIGERIA, Bamidele O. Awokoya, Office of the Consulate General of the Federal Republic of Nigeria, and Felix Igbinosun, Defendants.**

**No. 86 Civ. 7617 (PNL).**

United States District Court,
S.D. New York.

Feb. 1, 1989.

O'Donnell Fox & Gartner, New York City (Kenneth A. Bloom, of counsel), and

Elliott R. Feldman, Mark T. Mullen, Philadelphia, Pa., for plaintiffs.

Lawlor & Caulfield, New York City (Michael J. Caulfield, of counsel), for defendants.

## OPINION AND ORDER

LEVAL, District Judge.

Defendant, Bamidele O. Awokoya ("Awokoya"), former Consul General of the Federal Republic of Nigeria, moves for a protective order barring the taking of discovery pursuant to F.R.Civ.P. Rules 56(b) and 26(c) for summary judgment and dismissing the complaint by reason of consular immunity from suit.

## BACKGROUND

The action is brought by Koeppel & Koeppel and Tenth City Associates to recover for property damage and loss of rental income caused by a fire originating on the 33rd floor of 575 Lexington Avenue. At the time of the fire, March 28, 1986, the 33rd floor was leased by the Federal Republic of Nigeria for use as a consulate. Defendant, Awokoya, was the Nigerian Consul General in New York from August, 1984 until October of 1987. He is presently residing in Nigeria and is not in government service.

Plaintiffs allege that the fire was caused, either intentionally or negligently, by a Nigerian citizen, Mr. Felix Igbinosun (who was living in the Consulate at the time). Plaintiffs allege that Mr. Igbinosun's presence in the office during the night violated the terms of the lease, which permitted the owner of the building to exclude all persons who did not present a special pass from 6:00 P.M. to 8:00 A.M.. Plaintiffs assert claims of negligence and breach of contract against a variety of defendants, including Mr. Awokoya.[1]

---

1. Prior to this motion, this court had decided a series of motions regarding service of process upon some of the other defendants, the Federal Republic of Nigeria and the Consulate General. After finding that service had been made improperly, I dismissed the complaint with leave to reserve the defendants. Plaintiffs refiled the complaint and reserved the defendants in a separate action, *Koeppel v. Federal Republic of*

*Nigeria,* 88 Civ. 1099(PNL), which was consolidated with the present case. Since none of this prior motion practice affected Awokoya's status as defendant, that background is not relevant to this motion. Awokoya was properly served in the first instance. *See,* Memorandum and Order, *Koeppel v. Nigeria* 86 Civ. 7617(PNL), January 7, 1988, p. 7.

DISCUSSION

This court's jurisdiction over Mr. Awokoya is founded on Article III, Section 2 of the United States Constitution, which extends jurisdiction to the federal courts "to all cases affecting Ambassadors, other public Ministers and Consuls." The statutory corollary of this provisions is 28 U.S.C. § 1351 which vests the district courts with original jurisdiction in civil suits against consuls of foreign states.

Mr. Awokoya contends that, in providing refuge to a Nigerian national, he was acting in his official capacity, and is thus immune from suit for any claims arising out of that act. Def. Ans. ¶ 11. He is supported in this assertion by the affidavit of Mr. Abraham Tukuru, Mr. Awokoya's successor and the current Nigerian Consul General. Mr. Tukuru notes that his duties include "providing refuge to and generally protecting the interests of Nigerian nationals." Tukuru Aff. ¶ 6.

Awokoya also presents a certificate of Richard Gookin, the Assistant Chief of Protocol at the U.S. State Department, that Mr. Awokoya was recognized by the United States as the Nigerian Consul General in New York during the period in question and that Mr. Awokoya's position subjected him to the provisions of the Vienna Convention on Consular Relations, April 24, 1983, 21 U.S.T. 77, T.I.A.S. 6820–, 596 U.N.T.S. 261 (the "Convention"), which governs the immunity of consular officers from the jurisdiction of the United States courts. The pertinent provision is Article 43:

1. Consular officers and consular employees shall not be amenable to the jurisdiction of the judicial or administrative authorities of the receiving state in respect of acts performed in the exercise of consular functions.

2. The provisions of paragraph 1 of this Article shall not, however, apply in respect of a civil action either:

(a) arising out of a contract concluded by a consular officer or a consular employee in which he did not contract expressly or impliedly as an agent of the sending State; or

(b) by a third party for damages arising from an accident in the receiving State caused by a vehicle, vessel or aircraft.

Under this governing standard a consular officer is not immune from all legal process, but must "respond to any process and plead and prove immunity on the ground that the act or omission underlying the process was in the performance of his official functions." *Restatement (Third) of the Law of Foreign Relations of the United States.* (1987), § 465, comment A. Awokoya's entitlement to immunity turns on whether his acts forming the basis of liability were performed in the exercise of "consular functions" within the meaning of the Convention and relevant law.

"Consular functions" are defined by the extensive provisions of Article 5(a)-(m) of the Convention. Two sections of Article 5 are raised by the parties in this case:

Consular functions consist in:

(a) protecting in the receiving State the interests of the sending State and of its nationals, both individuals and bodies corporate, within the limits permitted by international law; ...

(m) performing any other functions entrusted to a consular post by the sending State which are not prohibited by the laws and regulations of the receiving State....

The Restatement adds little to this definition, only noting that the list is not "exhaustive," and that "Consular officers may exercise any function ... entrusted to them by the sending State that is not prohibited by the receiving State." *Restatement (Third) of the Law of Foreign Relations of the United States.* (1987), § 465, Rep. Note 4 (1987) (The State Department provides no guidance, noting only that "whether an act is performed in the exercise of consular functions is for the court having subject matter jurisdiction to determine"). State Dept. Certificate, p. 2.

There is very little case-law construing what acts constitute "consular functions" under the Convention, and thereby entitle an individual officer to immunity. In the most recent such case, *Joseph v. Office of Consulate General of Nigeria,* 830 F.2d

1018 (9th Cir.1987), claims for conversion, trespass and waste were brought against a Nigerian consular officer who had rented the plaintiff's house for a five-year term. The plaintiff charged that during the period of the officer's residence in the house, he had damaged the house and the grounds, principally by removing most of the furnishings and fixtures, including the trees that had been on the property and a large, built-in barbecue. The court in *Joseph* held that the tortious acts performed by the Nigerian consul were not within the exercise of his "consular functions." "The 'exercise' of a consular function necessarily implies an attempt by an employee to perform his or her duties successfully." *Id.* at 1027. Because no public function could conceivably have been achieved by that officer's acts, the court held that there was no consular immunity.

In *Gerritsen v. de la Madrid–Hurtado*, 819 F.2d 1511 (9th Cir.1987), plaintiff sued Mexican consular officials who threatened him with a gun, and beat him with an iron bar to prevent him from distributing leaflets hostile to the Mexican government in front of the Mexican consulate in Los Angeles. The court held that no immunity existed under Art. 5(a) because the officials' attempt to suppress the plaintiff's propaganda constituted an interference with the internal affairs of the United States and were prohibited by international law. *Id.* at 1516. Neither was immunity conferred by Art. 5(m), because assault with a deadly weapon was prohibited by the penal laws of the United States. *Id.* at 1517.

*Heaney v. Government of Spain*, 445 F.2d 501 (2d Cir.1971), held that a Spanish official was immune from suit over a contract signed by that official in his official capacity. The plaintiff, an advocate of independence for Northern Ireland, asserted that he had contracted with Spanish officials for their funding of his anti-British activities in the hope that such propaganda would promote eventual Spanish control over Gibraltar. Although such a contract did not fall within any of the listed definitions of consular functions in Article 5, Judge Friendly explained that the "catch-all" provision of Art. 5(m) embraced such a consular act since "a narrow reading of the provision would be inconsistent" with the purpose of the Convention. *Id.* at 505.

It appears that Article 5(a) of the Convention would include Awokoya's actions within the scope of consular functions. Providing refuge to Nigerian nationals in the United States could be construed as "protecting the interests" of such individuals.

Permitting a national to remain in the consulate overnight would have a clear public purpose. In this respect, Awokoya is nothing like the defendant in *Joseph*, who vandalized and stole a variety of furnishings from the house which he had rented as a private residence. The *Joseph* court found correctly that no possible public purpose was furthered by the tortious acts alleged in that case. It reasoned that consular functions "implied an attempt by an employee to perform his or her consular duties successfully." *Joseph, supra,* at 1027. Mr. Awokoya's actions fall within this liberal definition.

Plaintiff suggests no provision of customary or conventional international law that would forbid such action. Notwithstanding that both may involve torts, negligently permitting a person to remain overnight in commercial office space is significantly different from the beatings which *Gerritsen* found to be beyond consular immunity. *Gerritsen, supra,* at 1516. It is not clear whether the difference lies in the degree of unacceptability of the tortious conduct or in the fact that beating also violates the criminal law—according to both local statutory standards and generally accepted international standards. However the dividing standard may be fashioned, I would conclude that the negligence and/or breach of contract alleged in this case, undertaken for the purpose of providing shelter to a citizen of the consul's state, is entitled to the benefits of consular immunity.

Plaintiff's argument suggests that no immunity should be afforded if the consular official's conduct involves breach of the

law. If this were the rule, however, there would be no immunity. Every lawsuit asserted against a consular official accuses him or her of some violation of legal rights. Some unfairness to the wronged party is inherent in the notion of immunity.

Nonetheless, this does not leave foreign consuls free to abuse legal rights with impunity. As Judge Friendly noted in *Heaney*, the State Department possesses means of dealing with the unacceptable behavior of foreign diplomats. *Heaney, supra*, at 505. Furthermore, a finding of immunity for an individual does not necessarily leave the plaintiff without remedy. Because of the provisions of the Foreign Sovereign Immunities Act, plaintiff may proceed against the foreign government. *See* Memorandum and Order, January 7, 1988, 86 Civ. 7617 (PNL)

I find that the act of allowing Igbinosun to remain in the consulate overnight was "performed in the exercise of consular functions" by Mr. Awokoya, and summary judgment must be granted in his favor as he is immune from the jurisdiction of this court pursuant to Article 43(1) of the Convention.

Awokoya's motion for a protective order barring his deposition is mooted by the granting of his motion for summary judgment. The notice of deposition served on him as a party is voided by the dismissal of the suit against him. Awokoya, who is now retired from diplomatic service and lives in Nigeria, has not been subpoenaed. It therefore need not be decided whether he is entitled to consular immunity governing the giving of testimony under Article 44 of the Convention.

CONCLUSION

Summary judgment is granted for the defendant Bamidele E. Awokoya on the grounds of consular immunity. The motion for a protective order is dismissed as moot.

SO ORDERED.