**Mason FORD and Sonia Ford, Plaintiffs,**

v.

**Luis Felipe CLEMENT, Consul General of Panama in New York; U.S. State Department; and/or Republic of Panama, Defendants.**

No. 92 Civ. 3508 (SS).

United States District Court,
S.D. New York.

Sept. 8, 1993.

Mason Ford and Sonia Ford, pro se.

Anastasios Sarikas, New York City, for defendants Luis Felipe Clement and, on a limited basis, the Republic of Panama.

## MEMORANDUM OPINION AND ORDER

SOTOMAYOR, District Judge.

Defendants move to dismiss the Third Amended Complaint ("Complaint") under principles of consular immunity and foreign sovereign immunity, and for failure to state a claim upon which relief may be granted. For the reasons stated below, the motion is **GRANTED** and the case is **DISMISSED**.

### I. Background

The *pro se* plaintiffs in this action are Sonia Ford, formerly Vice Consul of the Republic of Panama in New York, and her husband, Mason Ford. In their Complaint, plaintiffs allege harms caused by defendant Luis Felipe Clement, Consul General of the Republic of Panama in New York.

Mrs. Ford, a citizen of Panama, is also a naturalized United States citizen. According to the Complaint, she has endeavored since December of 1989 to assist Panamanian diplomats working in New York City. Her labors were recognized when, in May of 1990, she was formally appointed Vice Consul of Maritime Affairs in New York. Her efforts apparently led to the reopening of the "Segumar" maritime office, which had been closed. She also attempted to locate a new office for the consulate; she was directed in this search by "SECNAVES", the maritime bureau of the Ministry of the Treasurer in Panama.

Things changed for Mrs. Ford when Mr. Luis Felipe Clement was appointed in Panama to serve as Consul General in New York, an appointment which, according to plaintiffs, represented "a continuation of the personal patronage system of the military government" in Panama. According to the Complaint, once Mr. Clement arrived in New York late in 1990, he "built up his own staff

and began isolating Mrs. Ford ... [and] began working against her accreditation," allegedly indulging in "a campaign of harassment designed to force Mrs. Ford out of the Consulate in direct contradiction to the official Panama government appointment of Mrs. Ford." Mr. Clement purportedly had Mrs. Ford "surveill[ed]," and spread "false allegations against both her and Mr. Ford, verbally and in writing to Ambassador Vallarino and Ministers Galindo and Linares."

The allegations set out in the Complaint are no doubt quite distressing, not only with respect to the plaintiff's well-being but because there are claims that Mr. Clement "engag[ed] in activities designed to further his own financial interests at the expense of both Panama and the U.S." Indeed, the Complaint notes that Panamanian newspapers portrayed Mr. Clement as "expropriating government funds for his own use."

In any event, Mr. Clement's "activities against Mrs. Ford" allegedly "created such personal stress on her to cause her to become ill and also injure herself, and he ultimately and improperly caused her to be discharged." The Complaint states that Mr. Clement refused to pay her, and has interfered with an order that he pay her.

In addition to Mr. Clement, plaintiffs formally name, but have not served, the United States State Department and the Republic of Panama as defendants in this action. Other than the failure of these governments to provide the "courtesy of a response" to the plaintiffs' requests for assistance, however, the Complaint attributes no wrong actions to these defendants.

Plaintiffs seek as relief a formal apology from the Government of Panama for their treatment of Mrs. Ford, "as well as written assurances that any and all negative or derogatory materials against Mrs. Ford have been removed from the files and destroyed." The plaintiffs also seek letters thanking Mrs. Ford for her efforts on behalf of the Panamanian agencies. Plaintiffs demand that Mr. Clement be censured for his treatment of Mrs. Ford, and they seek $250,000 in compensation for Mrs. Ford's past efforts and $10,000,000 for damages to her reputation and her well being.

Mr. Clement has moved to dismiss the claims brought against him on several grounds, including the consular immunity bestowed by the Vienna Convention on Consular Relations, April 24, 1983, 21 U.S.T. 77, T.I.A.S. 6820–, 596 U.N.T.S. 261 (the "Vienna Convention"). The Republic of Panama has entered a limited appearance for purposes of moving, on various grounds, to dismiss the claims against it. These motions are now before me.

## II. Discussion

### Consular Immunity of Mr. Clement Under the Vienna Convention

Jurisdiction over Mr. Clement, a consular official, is premised on 28 U.S.C. § 1351, which invests in the district courts "original jurisdiction ... of all civil actions and proceedings against—(1) consuls or vice consuls of foreign states." This Court does not have jurisdiction over Mr. Clement, however, if he is protected by consular immunity. Thus, no matter how troubling Mr. Clement's alleged actions may be, the Court cannot address them if he is immune from the jurisdiction of this Court.

■ The appointment of defendant Luis Felipe Clement as the Consul General of the Republic of Panama was approved by the Panamanian Minister of Foreign Relations, the Honorable Julio Linares. According to a September 21, 1990, letter from Richard Gookin, Associate Chief of Protocol for the United States Department of State, the United States had, effective September 5, 1990, recognized Mr. Clement as a consular officer in New York and extended to him the immunities set out in the Vienna Convention on Consular Relations, April 24, 1983, 21 U.S.T. 77, T.I.A.S. 6820–, 596 U.N.T.S. 261 (the "Vienna Convention"). It is on the basis of these immunities, et alia, that Mr. Clement moves to dismiss the claims against him.[1]

---

1. The particular relief that defendants seek is unclear. Because defendants' Memorandum of Law does not expressly address the applicability of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq. ("FSIA"), to the claims brought against Mr. Clement, and since the FSIA

Article 43 of the Vienna Convention provides as follows:

1. Consular officers and consular employees shall not be amenable to the jurisdiction of the judicial or administrative authorities of the receiving state in respect of acts performed in the exercise of consular functions.

2. The provisions of paragraph 1 of this Article shall not, however, apply in respect of a civil action either:

   (a) arising out of a contract concluded by a consular officer or a consular employee in which he did not contract expressly or impliedly as an agent of the sending State; or

   (b) by a third party for damage arising from an accident in the receiving State caused by a vehicle, vessel or aircraft.

"Under this governing standard a consular officer is not immune from all legal process, but must 'respond to any process and plead and prove immunity on the ground that the act or omission underlying the process was in the performance of his official functions.'" *Koeppel & Koeppel v. Federal Republic of Nigeria*, 704 F.Supp. 521, 522 (S.D.N.Y. 1989), citing *Restatement (Third) of the Law of Foreign Relations of the United States* (1987) ("Restatement"), § 465, comment A. There is no claim that either of the exceptions in Paragraph 2 applies to this action, and therefore the sole issue is whether or not Mr. Clement may avail himself of the immunity conferred under Paragraph 1—in other words, the issue is whether or not the actions giving rise to this suit were "performed in the exercise of consular functions." This involves a two-part inquiry. First, the Court must determine that the actions of the consular officials implicated some "consular function." Second, the "acts for which the consular officials seek immunity must be 'performed in the exercise of the consular functions' in question." *Gerritsen v. Consulado*

*General de Mexico*, 989 F.2d 340, 346 (9th Cir.1993), citing *Joseph v. Office of the Consulate General of Nigeria*, 830 F.2d 1018, 1027–28 (9th Cir.1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988). Before turning to the first prong of the inquiry, I note that there is little guidance on this subject from the October 28, 1992, certificate of Richard Gookin, which simply states that "[w]hether a particular action or activity would be considered to be an exercise of a person's consular functions is a matter for judicial determination."

"Consular functions" include such activities as "affording protection to the interests of the sending state or its nationals [and] furthering commercial, economic, cultural and scientific relations between the sending state and the receiving state by lawful means," among others. Restatement § 465, Reporters' Note 4, citing Vienna Convention, Article 5. By virtue of the catch-all provision of Article 5(m) of the Vienna Convention, consular functions also include

performing any other functions entrusted to a consular post by the sending State which are not prohibited by the laws and regulations of the receiving State or to which no objection is taken by the receiving State or which are referred to in the international agreements in force between the sending State and the receiving State.

Although there is little case law as to what constitutes a consular function, the Court nevertheless concludes that consular functions are implicated in this action—in particular, the management and supervision of the Vice Consul and other consular staff. These tasks come within the scope of Article 5(m) since they are fundamental to the efficient execution of all of the other consulate functions enumerated by the Vienna Convention. Moreover, they are necessarily entrusted to the Consul General by the sending State[2] and indeed lie at the core of any

places the initial burden on the defendant of making a prima facie case that it is a foreign sovereign, *Cargill Intern. v. M/T Pavel Dybenko*, 991 F.2d 1012 (2d Cir.1993), I will not address the question of whether Mr. Clement may claim the immunity provided by the FSIA.

**2.** This action concerns plaintiffs' allegation that Mr. Clement's behavior toward Mrs. Ford led to her constructive discharge prior to her official termination by the Republic of Panama. Plaintiffs also question Mr. Clement's role in instigating the official termination. My finding that this case implicates the Article 5(m) consular function of managing and supervising the consular

efforts by the Consul General to perform its designated functions. Finally, the Second Circuit has cautioned against a narrow reading of the immunity provided by the Vienna convention, in particular Article 5(m). *See Heaney v. Government of Spain,* 445 F.2d 501 (2d Cir.1971).

As to the second prong of the test, there are no clear rules that define what actions constitute "performing" the exercise of consular functions. Several decisions do, however, carve out some helpful contours. In *Gerritsen,* 989 F.2d at 346, for example, the plaintiff was giving speeches and distributing leaflets against the Mexican government near the Mexican consulate. The Ninth Circuit agreed with the district court that "maintain[ing] the peace and dignity of the consular offices [and protecting] consular premises" were legitimate consular functions within the meaning of Article 43. *Id.* The court then considered whether or not the efforts by two defendant consular officials to persuade plaintiff to leave the area or to desist from disrupting consular business furthered these functions. The court concluded that verbal warnings and threats to the plaintiff, without accompanying physical contact, constituted a reasonable effort to effectuate the consular functions, and thus upheld the district court's determination that those two defendants were immune from suit under the Vienna Convention. *Id.*

By contrast, the plaintiff in *Joseph v. The Office of Consulate General of Nigeria et al.,* 830 F.2d 1018 (9th Cir.1987), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988), leased a house to the Nigerian Consulate, and the consular employees who resided there allegedly removed property from the house and severely damaged the premises. The Ninth Circuit concluded that the tortious acts alleged by the plaintiff "were not 'performed in the exercise of' [the officer's] consular function as a resident of the [plaintiff's] house, or of any of [his] other consular functions," for these allegedly tortious acts did not "further[ ]" any "public interest or function of the Consulate or Nigeria." 830 F.2d

at 1027. In reaching these conclusions, the Court distinguished the "scope of employment," which is governed by state law and "does not require the acts at issue to further an employer's interests," from "exercise of a consular function," which is not governed by state law and which "concerns acts in support of an employee's consular duties." 830 F.2d at 1028 n. 9. The court also noted that the "'exercise' of a consular function necessarily implies an attempt by an employee to perform his or her consular duties successfully." 830 F.2d at 1027.

Judge Leval, reviewing several Vienna Convention cases, observed that it was unclear whether the dividing line between torts that may be protected by the Vienna Convention and those that are not might lie "in the degree of unacceptability of the tortious conduct or in the fact that [some torts] also violate[ ] the criminal law—according to both local statutory standards and generally accepted international standards". *Koeppel & Koeppel v. The Federal Republic of Nigeria,* 704 F.Supp. 521, 523 (S.D.N.Y.1989). In *Koeppel,* the plaintiffs sought to recover for property damage and loss of rental income caused by a fire in premises leased by the Federal Republic of Nigeria for use as a consulate. Plaintiffs alleged that the fire was caused, either intentionally or negligently, by a Nigerian citizen who was living in the consulate at the time, but whose presence in the office during the night violated the terms of the lease. The court held that defendant consul general was immune from suit by virtue of the Vienna Convention, since allowing the Nigerian national to stay overnight in the office was performed in the exercise of the consular function of "providing refuge to and generally protecting the interests of Nigerian nationals." 704 F.Supp. at 522. The court rejected the argument that "no immunity should be afforded if the consular official's conduct involves breach of the law," aptly remarking that "[i]f this were the rule ... there would be no immunity, ... [since e]very lawsuit asserted against a consular

---

staff is not, however, inconsistent with Article 19 of the Vienna Convention, which invests the sending State with the power to appoint the members of the consular staff, or with Article 25,

which provides several methods by which the functions of a member of a consular post may be terminated, including notification by the sending State.

official accuses him or her of some violation of legal rights." 704 F.Supp. at 523–24.

■ These cases support this Court's conclusion that Mr. Clement's actions in dealing with Mrs. Ford and in communicating with Panamanian officials regarding Mrs. Ford were "performed in the exercise of" his consular functions of managing and supervising the consular staff so as to effectuate other consular functions. Moreover, although the finding of immunity may leave Mrs. Ford without a remedy in American courts, "[s]ome unfairness to the wronged party is inherent in the notion of immunity." *Koeppel*, 704 F.Supp. at 524. It would be unsound international policy to allow the courts of one nation to sit in judgment about the delicate policy decisions of another nation regarding the supervision and management of its consular personnel, especially those at the level of vice consul. The claims against Mr. Clement must therefore be dismissed.[3]

### Defendant Republic of Panama

Defendants' brief raises several theories as to why the Complaint should be dismissed as against the putative defendant Republic of Panama. Plaintiffs' extensive submissions question the capacity of attorney Anastasios Sarikas to represent the Republic of Panama. Despite Mr. Sarikas's sworn Affidavit that he is "making a limited appearance o[n] behalf of the Republic of Panama in this matter," plaintiffs nonetheless appear to suggest that the Republic of Panama never authorized Mr. Sarikas to appear on its behalf.

■ I need not address this contention. Nor do I need to delve into the plethora of international law doctrines raised by Mr. Sarikas in support of his position that the Republic of Panama should be dismissed

from this action[4]. I may refrain from addressing these questions for the simple reason that the Republic of Panama is not a party to this action. *See* Response of Plaintiffs in Opposition to Motion to Dismiss at 8, 11, 12, 14. The plaintiffs merely identify the Republic of Panama as a "possible" defendant in the Complaint, and there has been no return of service filed in this action. In any event, the Complaint does not state a cause of action against the Republic of Panama. Since there are no claims against the Republic of Panama, and since plaintiffs have indicated that they do not intend for the Republic of Panama to be a party to this action, the Complaint is **DISMISSED** as against the Republic of Panama pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim against that putative defendant.

### Defendant United States Department of State

The Complaint asserts no claim against the United States Department of State, and therefore the Court *sua sponte* **DISMISSES** the Complaint as against the United States Department of State pursuant to Fed. R.Civ.P. 12(b)(6) for "failure to state a claim upon which relief can be granted." Since the Department of State has not been served, and the Court has advised the plaintiff of the need to serve all defendants, dismissal is also made pursuant to Rule 4(j).

### Plaintiff Mason Ford

■ The only allegations that plaintiff Mr. Ford brings against defendants is his contention in the Complaint that Mr. Clement spread "false allegations against [him], verbally and in writing to Ambassador Vallarino and Ministers Galindo and Linares." Since defendants have not addressed the applicability of either the Vienna Convention or the

---

3. As Judge Leval has pointed out, the dismissal of an action under the Vienna Convention "does not leave foreign consuls free to abuse legal rights with impunity." *Koeppel*, 704 F.Supp. at 523. The State Department possesses means to deal with the unacceptable behavior of foreign diplomats. *See Heaney v. Government of Spain*, 445 F.2d 501, 505 (2d Cir.1971); Vienna Convention, Article 23 (receiving state may declare a consular officer *"persona non grata"*).

4. Defendants suggest that this Court retains the discretion to dismiss this action under the Act of

State doctrine. This judicially-created doctrine "operates to confer presumptive validity on certain acts of foreign sovereigns by rendering nonjusticiable claims that challenge such acts." *Allied Bank International v. Banco Credito Agricola de Cartago*, 757 F.2d 516, 520 (2d Cir.), *cert. denied*, 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985). I need not address the applicability of the act of state doctrine, however, because I am dismissing the action on other grounds.

FSIA to Mr. Clement with respect to Mr. Ford's claims, I need not consider these questions. Rather, I dismiss this cause of action because it fails to state a claim.

■■ A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a). Moreover, Rule 8(a), and not state law, controls the manner in which state law claims must be pled in federal court. *Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir.1986); *see also Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Liguori v. Alexander,* 495 F.Supp. 641, 647 (S.D.N.Y.1980); 5 Wright, Miller & Cooper, *Federal Practice and Procedure* § 1245. In pleading an action for defamation, "the allegations of the complaint must afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Kelly,* 806 F.2d at 46, citing *Liguori,* 495 F.Supp. at 647.

All that Mr. Ford says about Mr. Clement's allegedly defamatory statements is that they were "false." This does not give Mr. Clement any notice whatsoever of the communications at issue. It provides less notice, for example, than the averments that were determined to be insufficient as a matter of law in *Creed Taylor, Inc. v. CBS, Inc.,* 718 F.Supp. 1171, 1176 (S.D.N.Y.1989) (*"CTI"*). The *CTI* claim at issue stated that the defendant "sought to disseminate false and misleading information meant to convey that '[plaintiff] and its principal are 'has beens' who are no longer a force in the music industry, and who now exist only in the context of the Defendants name and label.'" *Id.* Judge Carter dismissed that cause of action because the claim did not afford defendant with enough information to defend itself. Mr. Clement is put on even less notice than was the defendant in *CTI,* since the Complaint against Mr. Clement says even less about the nature or content of his allegedly false statements about the plaintiff, and, unlike the *CTI* complaint, does not even identify when the allegedly false communications took place.

### III. *Conclusions*

For the reasons stated above, defendants' motion is **GRANTED** and the Complaint is **DISMISSED** in its entirety.

**SO ORDERED.**