652 So.2d 420 (1995)
The STATE of Florida, Appellant,
v.
Pedro DOERING-SACHS, Appellee.
No. 94-438.
District Court of Appeal of Florida, Third District.
March 15, 1995.
Rehearing Denied April 19, 1995.
*421 Robert A. Butterworth, Atty. Gen., and Fleur J. Lobree, Asst. Atty. Gen., for appellant.
Arthur W. Tifford, Miami, for appellee.
Before BARKDULL, HUBBART and LEVY, JJ.
LEVY, Judge.
The State appeals the dismissal of three counts of an Information based upon the trial court's finding that the defendant is entitled to consular immunity. We reverse because we find that the defendant did not commit the alleged criminal acts while furthering any consular function.
The defendant, Pedro Doering-Sachs, is an employee of the Argentinean Consulate in Miami. In November of 1993, the defendant was driving a black van displaying a diplomatic license plate on State Road 836 when his van allegedly struck another vehicle. The female motorist who had allegedly been hit called the police from her mobile phone to report the incident. The victim claimed that the defendant intentionally "rammed" her with his vehicle and then, from his vehicle, threatened her with a handgun. The police responded to the call and, with the help of the alleged victim, spotted the van and pulled the defendant over. Upon stopping the defendant's van, the police told the defendant to step out of his vehicle. The defendant responded by lowering his window and screaming, "You can't do this!" The police once again told the defendant to step out of the vehicle, but the defendant attempted to prevent the officers from opening the door by holding the driver's side door lock with his hand. As the police attempted to open the door, the defendant allegedly grabbed a handgun. One of the officers immediately grabbed the defendant's arm and forced the *422 defendant to release the gun. The police then pulled the defendant out of the car and placed him under arrest.
The State charged the defendant with the following crimes: (1) one count of aggravated assault with a motor vehicle on the female motorist; (2) & (3) two counts of aggravated assault on a law enforcement officer; (4) one count of resisting arrest without violence; and (5) one count of aggravated assault with a firearm on the female motorist.
The defendant filed a motion to dismiss all of the charges for lack of jurisdiction based upon a claim of consular immunity. The defendant alleged that, at the time of his arrest, he was employed by the Argentinean Consulate and was on a consular mission to deliver sensitive, diplomatic documents to an FBI agent. Along with the motion to dismiss, the defendant submitted a letter from the Deputy Consul of Argentina stating that the defendant, at the time of his arrest, was acting as a custodian of sensitive documents in his capacity as an administrative technician for the Argentinean Consulate. The trial court granted the defendant's motion to dismiss counts two, three and four of the Information because it found that, "the defendant's acts as alleged in Count 2, 3 and 4 can and probably should be construed as `performed in the exercise of consular functions.'"[1] The State now appeals the trial court's dismissal of counts two through four of the Information.
The State contends that the trial court erred in dismissing counts two through four of the Information because the defendant's acts in resisting arrest and assaulting the arresting officers were outside the scope of his consular function. The defendant, however, claims that he is immune from the jurisdiction of American courts, and consequently immune from prosecution, because he committed the alleged criminal acts against the officers while performing and furthering a consular function for the Argentinean Consulate.
By virtue of the Supremacy Clause of the United States Constitution, the terms of a treaty or convention entered into by the United States can limit the exercise of jurisdiction by State courts. U.S. Const. art. VI; see also Kolovrat v. Oregon, 366 U.S. 187, 81 S.Ct. 922, 6 L.Ed.2d 218 (1961); Whitney v. Robertson, 124 U.S. 190, 8 S.Ct. 456, 31 L.Ed. 386 (1888); Gerritsen v. de la Madrid Hurtado, 819 F.2d 1511 (9th Cir.1987). The Vienna Convention on Consular Relations (hereinafter "Vienna Convention") governs the diplomatic relations between the United States and Argentina.[2] Vienna Convention on Consular Relations, opened for signature Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261 (entered into force by Argentina on Mar. 7, 1967; entered into force by the United States on Dec. 24, 1969). Pursuant to article 43 of the Vienna Convention, consular officers or employees are not amenable to the jurisdiction of American courts if the acts for which they seek immunity were performed in the exercise of a consular function.[3] Vienna Convention, 21 U.S.T. at 104. The question for us then is whether the defendant is entitled to immunity under article 43 of the Vienna Convention for the alleged criminal acts which he committed against the arresting officers.
We first note that the State has conceded that the defendant is a "consular employee" as defined by article 1(e) of the Vienna *423 Convention.[4] In order to determine whether consular immunity applies, we must first determine whether the defendant was engaged in a "consular function", as defined by article 5 of the Vienna Convention, at the time that he committed the alleged acts against the officers. Vienna Convention, art. 43, 21 U.S.T. at 80; see also Gerritsen v. Consulado Gen. De Mexico, 989 F.2d 340, 346 (9th Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); Joseph v. Office of the Consulate Gen. of Nigeria, 830 F.2d 1018, 1027 (9th Cir.1987), cert. denied, 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988); Ford v. Clement, 834 F. Supp. 72 (S.D.N.Y. 1993), aff'd, 29 F.3d 621 (2d Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 449, 130 L.Ed.2d 359 (1994). At the time that the police arrested the defendant, he was in route to deliver sensitive, diplomatic documents to an agent of the FBI. For purposes of this appeal, neither party has disputed that the defendant's act of delivering the documents was a "consular function" as defined by Article 5 of the Vienna Convention.[5]
Since we know that the defendant was performing a consular function just prior to committing the acts for which he was arrested, we must decide whether the alleged criminal acts were within the exercise of this consular function. Vienna Convention, art. 43, 21 U.S.T. at 80; see also Gerritsen; Joseph; Ford. To determine whether an act is performed in the exercise of a consular function, a court should consider the following factors: "(1) whether there is a logical connection between the act and the purported function; and (2) whether the act is a reasonable means to the fulfillment of the [consular] function." United States v. Cole, 717 F. Supp. 309, 322 (E.D.Pa. 1989) (quoting Gerritsen v. Escobar Y Cordova, 721 F. Supp. 253, 258 (C.D.Cal. 1988)). The criteria used to make this determination are:
(1) the subjective intent of the consular official, based on objective evidence, in performing the act; (2) whether the act furthered some function of the consulate; (3) whether the act is of a `personal character'; (4) the seriousness of the act; and (5) the absence or presence of a malicious motive in the performance of the particular act.
Cole, 717 F. Supp. at 323 (quoting Escobar Y Cordova, 721 F. Supp. at 258). Additionally, a court may consider whether the defendant's acts are part of the defendant's "course of criminal conduct." Cole, 717 F. Supp. at 323. We also note that, "[t]he `exercise' of a consular function necessarily implies an attempt by an employee to perform his or her consular duties successfully." Joseph, 830 F.2d at 1027; Commonwealth v. Jerez, 390 Mass. 456, 457 N.E.2d 1105 (1983).
In the instant case, the record, specifically including the arrest affidavit,[6] reflects that *424 the defendant's display of a firearm, and other acts of resistance towards the police officers, were not in connection with, or in furtherance of, his consular duties. Rather, the substantial and competent evidence in the record reflects that the defendant lashed out against the police to avoid being arrested for the acts which he committed against the female motorist. In threatening the police officers with a gun, the defendant acted exactly as he had acted earlier towards the female motorist who neither knew about, nor posed any threat to, the documents that the defendant was transporting. Likewise, the record, viewed objectively, demonstrates that the police did nothing to indicate that they were after the documents which the defendant was transporting. In fact, the record indicates that the arresting officers repeatedly requested the defendant to exit his vehicle. The defendant could easily have complied with the officers' requests by exiting and then locking the vehicle thereby respecting the laws of this State[7] while at the same time furthering his consular function by safeguarding the sensitive documents located in the van. Clearly, there was no meaningful or logical connection between the defendant's alleged criminal acts against the arresting officers and the purported consular function which the defendant was performing. Instead, the defendant's actions were part of a continuing criminal episode, which in no way related to the defendant's consular responsibilities.
Consequently, because competent, substantial evidence did not support the granting of immunity, the trial court erred in concluding that it did not have jurisdiction over the defendant and in dismissing counts two through four of the Information. See Joseph, 830 F.2d at 1027 (holding that tortious acts committed by a Nigerian officer were not performed in the exercise of the officer's consular duties since the alleged acts did not further any public interest or function of the Nigerian Consulate); compare with Koeppel & Koeppel v. Federal Republic of Nigeria, 704 F. Supp. 521 (S.D.N.Y. 1989) (granting immunity to former Nigerian consul who provided refuge to a Nigerian citizen).
Reversed and remanded with instructions to reinstate counts two through four of the Information.
NOTES
[1] The trial court did not dismiss the two counts of aggravated assault against the alleged victim because it found in its order that "in no manner can these alleged acts be construed to be in furtherance of the consular functions of the Argentinean Consulate... ." The defendant is not contesting on appeal the right of the State to prosecute him in connection with his actions against the female motorist.
[2] The Vienna Convention is a multilateral convention which codifies international law regarding consular functions and immunities for several participating countries, including the United States and the Republic of Argentina. U.S. Dep't of State, Treaties in Force, Pub. No. 9430, at 312 (1994).
[3] Article 43 of the Vienna Convention provides as follows: "Immunity from jurisdiction 1. Consular officers and employees shall not be amenable to the jurisdiction of the judicial or administrative authorities of the receiving State in respect of acts performed in the exercise of consular functions." Vienna Convention, art. 43, 21 U.S.T. at 104.
[4] Under Article 1 of the Vienna Convention a "consular employee" is defined as "any person employed in the administrative or technical service of a consular post." Vienna Convention, art. 1, 21 U.S.T. at 80.
[5] Article 5 of the Vienna Convention, lists several acts which constitute the performance of a "consular function" including:

(a) protecting in the receiving State the interests of the sending State and of its nationals, both individuals and bodies corporate, within the limits permitted by international law; ... (m) performing any other function entrusted to a consular post by the sending State which are not prohibited by the laws and regulations of the receiving State or to which no objection is taken by the receiving State. .. .
Vienna Convention, art. 5, 21 U.S.T. at 85.
[6] The arrest affidavit, in pertinent part, describes the events which led to the defendant's arrest as follows:

[O]fficers responded to ... a black van that struck a motor vehicle occupied by a white female, the female using a mobile phone called the police. During this time the occupant of the van threatened victim [with a] gun and continued to harass her. At approx[imately] 42[nd] ave[nue] [officer] A. Alvarez observed the van and the victim pointed at it. Both officers ... in uniform and in marked units pulled the van over and told driver to step out. Instead the driver lowered the driver window [and] screamed "you can't do this." At this time [the defendant] was told to step out of the vehicle and instead [the defendant] held the lock with his hand [and] arm. Both officers were able to remove the defendant's hand [and] arm from the door and opened the door. At this time with the right hand defendant grabbed a 9mm Berretta from his left side. [Officer] Alvarez held [the defendant's] hand ... and the defendant released the gun ... Defendant then attempted to reach to the passenger seat at which time he was pulled out [and arrested].
[7] Article 55 of the Vienna Convention provides, in pertinent part as follows, "Without prejudice to their privileges and immunities, it is the duty of all persons enjoying such privileges and immunities to respect the laws and regulations of the receiving State." Vienna Convention, art. 55, 21 U.S.T. at 113 (emphasis added).