Catherine **JOSEPH**,
Plaintiff/Appellee/Cross-Appellant,

v.

**OFFICE OF the CONSULATE GENERAL OF NIGERIA, Consulate General of Nigeria, Federal Republic of Nigeria, et al., Defendants/Appellants/Cross-Appellees.**

Nos. 86–2630, 86–2707.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 1987.

Decided Oct. 19, 1987.

John H. Aspelin, San Francisco, Cal., for plaintiff/appellee/cross-appellant.

Carol Johnson Roduit, San Francisco, Cal., for defendants/appellants/cross-appellees.

Before CHOY, Senior Circuit Judge, TANG and NELSON, Circuit Judges.

CHOY, Senior Circuit Judge:

This appeal primarily requires us to decide whether the district court has subject matter jurisdiction over a landlord-tenant dispute between a landlord and a foreign state, its consulate, and its consular officials. We conclude that the district court has jurisdiction over the landlord's breach of contract and tort claims. The district court's order finding jurisdiction over only the tort claims is affirmed in part and reversed in part.

## BACKGROUND

The sovereign defendants in this case are the Federal Republic of Nigeria ("Nigeria") and the Consulate General of Nigeria (the "Consulate"). According to the defendants, the basic function of the Consulate is to protect the interests of Nigerians residing in its consular district, and to encourage cultural exchanges between Nigerian and American organizations.

In 1978, Catherine Joseph ("Joseph") leased a house in San Francisco to the Consulate. O. Effiong, a former consular officer, signed the standard form lease on behalf of the Consulate. The house was used as a residence by employees of the Consulate and their families. One of those consular employees was defendant A.A. Olalandu ("Olalandu"), a finance officer for the Consulate, who began residence at the Joseph property in 1982.

Shortly after the end of the five-year lease period, Joseph allegedly discovered that the tenants had removed property from the house and had left the premises severely damaged. Joseph brought suit in federal district court, seeking, inter alia, compensation for damages to fixtures,

landscaping, and appliances.[1] Joseph asserts four causes of action against both Nigeria and the Consulate. The first is for breach of contract; the other three are tort claims for conversion, trespass, and waste.[2] In addition, Joseph asserts three tort claims against Olalandu for conversion, trespass, and waste.

Joseph filed her complaint in district court in August 1984. The defendants did not respond. On September 27, 1985, the court entered a default judgment against the defendants. In January 1986, the defendants filed a motion to set aside the default judgment. The defendants contended that the default judgment was void for lack of jurisdiction on account of the defendants' sovereign and consular immunity. On March 19, 1986, without deciding the immunity question, the district court granted the defendants' motion on two conditions: 1) that the defendants raise their claims of sovereign and consular immunity in the form of a motion for summary judgment; and 2) that the defendants pay Joseph's attorney's fees. After the parties submitted motions for summary judgment, the court held a hearing on the sovereign immunity question.

On August 12, 1986, the court issued an opinion and order. The court determined that it had jurisdiction over Nigeria and the Consulate pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602–1611 (1982). Specifically, the court found jurisdiction over Joseph's tort claims under the FSIA's "tortious activity" exception to immunity. However, the court concluded that jurisdiction over Nigeria and the Consulate was not conferred by the FSIA's "waiver," "commercial activity," and "immovable property," exceptions. Because the district court found jurisdiction only pursuant to the tor-

---

1. The defendants' brief states that Joseph alleges "extensive damage to appliances, fixtures, and landscaping; removal of appliances, furniture, light fixtures, solid wood doors, the glass shower door; removal of shutters and drapes from thirty-three windows, removal of fully grown trees; the removal of wood framing from windows and floor boards, the removal of a built-in barbecue."

2. Joseph's cause of action against the Consulate for breach of contract is premised on the argument that the Consulate acted outside the scope of its consular authority in leasing the Joseph house. However, the district court's opinion indicates that Joseph has conceded that the Consulate is not subject to the breach of contract claim.

tious activity exception, the court's decision immunized Nigeria and the Consulate from Joseph's breach of contract claims.

The court found jurisdiction over Olalandu pursuant to 28 U.S.C. § 1351 (1982). The court determined that Olalandu was not protected by consular immunity under the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, T.I.A.S. No. 6820, 596 U.N.T.S. 261 (the "Vienna Convention"), which provides immunity to consular officials for actions which are performed in the exercise of the officials' consular functions.

In light of the district court's finding of jurisdiction, Joseph requested to have the default judgment reinstated. The request was denied by the district court "because no trial on the merits was ever held." The court then set a trial date for Joseph's claims.

Both Joseph and the defendants have brought interlocutory appeals in regard to the district court's decision.[3] The defendants appeal the district court's determination that it had jurisdiction over Joseph's tort claims against Nigeria and the Consulate pursuant to the tortious activity exception. Olalandu apparently appeals the district court's determination that he is not protected by consular immunity.[4]

Joseph contends on appeal that the district court erred in failing to reinstate the default judgment once immunity was denied. Joseph also argues that the district court incorrectly determined that jurisdiction over Nigeria and the Consulate is not conferred by the waiver, commercial activity, and immovable property exceptions to the FSIA.

## DISCUSSION

Our evaluation of the defendants' claims of immunity involves two independent doctrines. The doctrine of sovereign immunity is applicable only to states and their instrumentalities—here, Nigeria and the Consulate. The doctrine of consular immunity is applicable only to consular officials and employees—here, Olalandu.

### I. Sovereign Immunity

■ The FSIA is the exclusive source of subject matter jurisdiction over suits involving foreign states or their instrumentalities. De Letelier v. Republic of Chile, 748 F.2d 790, 793 (2d Cir.1984), cert. denied, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985); see 28 U.S.C. § 1330(a). Nigeria is of course a foreign state. The Consulate, as a separate legal person, also qualifies as a "foreign state" under the FSIA. Gerritsen v. de la Madrid Hurtado, 819 F.2d 1511, 1517 (9th Cir.1987).

■ Under the FSIA, we presume that actions taken by foreign states or their instrumentalities are sovereign acts and thus are protected from the exercise of our jurisdiction, unless one of the FSIA's exceptions to immunity applies. Meadows v. Dominican Republic, 817 F.2d 517, 522 (9th Cir.1987). Once the plaintiff offers evidence that an FSIA exception to immunity applies, the party claiming immunity bears the burden of proving by a preponderance of the evidence that the exception does not apply. See id. at 522–23; Vencedora Oceanica Navigacion, S.A. v. Compagnie Nationale Algerienne de Navigation, 730 F.2d 195, 199 (5th Cir.1984).

Joseph claims that Nigeria and the Consulate are subject to jurisdiction pursuant to four exceptions to sovereign immunity set forth in § 1605 of the FSIA. These exceptions are commonly known as the waiver exception, 28 U.S.C. § 1605(a)(1), the commercial activity exception, 28 U.S.C. § 1605(a)(2), the immovable property exception, 28 U.S.C. § 1605(a)(4), and the tortious

---

**3.** We hear the defendants' appeal, although interlocutory, pursuant to this court's order of March 6, 1987, denying Joseph's motion to dismiss the appeal for lack of jurisdiction.

**4.** Olalandu's alleged consular immunity is not discussed in the defendants' brief. However, the notice of appeal filed by the defendants on September 9, 1986, lists Olalandu as one of the parties appealing the district court's decision. In order to effect a complete review of the district court's decision, we will address the issue of Olalandu's immunity.

activity exception, 28 U.S.C. § 1605(a)(5).[5] We review de novo the district court's determination that subject matter jurisdiction over Joseph's lawsuit is conferred *only* by the tortious activity exception. *See Gerritsen,* 819 F.2d at 1515. We conclude that: 1) the waiver exception is applicable to all of Joseph's claims; 2) the commercial activity exception is applicable to Joseph's breach of contract claims; and 3) the tortious activity exception is applicable to Joseph's tort claims.

### A. *Waiver Exception*

The FSIA's waiver exception denies immunity in any case "in which the foreign state has waived its immunity either explicitly or by implication...." 28 U.S.C. § 1605(a)(1). The waiver exception is narrowly construed. *See Frolova v. Union of Soviet Socialist Republics,* 761 F.2d 370, 377 (7th Cir.1985). Implicit waivers are ordinarily found only where: "(1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that a contract is governed by the law of a particular country; and (3) a foreign state has filed a responsive pleading in a case without raising the defense of sovereign immunity." *Id.*

■ At issue in this case is whether the lease agreement between Joseph and the Consulate implicitly waives sovereign immunity. The relevant lease provision states:

> In the event that any action shall be commenced by either party hereto arising out of, or concerning this lease or any right or obligation derived therefrom, then in addition to all other relief

at law or equity, the prevailing party shall be entitled to recover attorney's fees as fixed by the court.

We conclude that this provision constitutes a waiver of sovereign immunity as to all of Joseph's claims against Nigeria and the Consulate.

A foreign state does not waive its sovereign immunity merely by entering into a contract with another party. Nevertheless, at the very least it is clear that a sovereign party has waived immunity where a contract *specifically* states that the laws of a jurisdiction within the United States are to govern the transaction. *Marlowe v. Argentine Naval Commission,* 604 F.Supp. 703, 708–09 (D.D.C.1985) (implicit waiver where contract stated that it "shall be governed by and construed in accordance with the laws of the District of Columbia"); *Resource Dynamics International, Ltd. v. General People's Committee for Communications and Maritime Transport in the Socialist People's Libyan Arab Jamahiriya,* 593 F.Supp. 572, 575 (N.D.Ga.1984) (implicit waiver where contract provided that "[t]his Agreement and the performance or breach hereof shall be governed by the ... laws in effect in the State of Virginia"). On the other hand, where a contract specifies that the laws of a jurisdiction outside of the United States are to govern, a waiver of sovereign immunity has not been made for the purposes of the FSIA. *See Colonial Bank v. Compagnie Generale Maritime et Financiere,* 645 F.Supp. 1457, 1461–62 (S.D.N.Y.1986).

■ In the instant case, the lease agreement does not specify which jurisdiction's

---

5. The relevant portions of section 1605(a) are as follows:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
> (1) in which the foreign state has waived its immunity either explicitly or by implication ...;
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state ...;
>
> .  .  .  .  .
>
> (4) in which ... rights in immovable property situated in the United States are in issue; or

> (5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for ... damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—
> (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused....

laws will govern disputes under the lease. Joseph argues that it is not necessary for a contract to specify which law will govern a contract in order for the waiver exception to apply. Indeed, there appears to be no justification for requiring a contract to specifically state the governing law in order for there to be a waiver of immunity. Waiver by contract is premised on an agreement by the parties that the United States courts may become involved in disputes arising pursuant to the contract. *Cf. Maritime International Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094, 1103 (D.C. Cir.1983) (arbitration agreement case), *cert. denied*, 464 U.S. 815, 104 S.Ct. 71, 78 L.Ed.2d 84 (1983). Where an agreement contemplates adjudication of a dispute by the United States courts, the waiver exception should be applied, regardless of whether the governing law is explicitly identified. *See id.* at 1103–04; *see also Liberian Eastern Timber Corp. v. Government of the Republic of Liberia*, 650 F.Supp. 73, 76 (S.D.N.Y.1986).

Because the lease at issue provides for adjudication of landlord-tenant disputes in court, we conclude that the lease contemplates participation of the United States courts in disputes between Joseph and her tenants. In light of the wholly local nature of the transaction, it is virtually inconceivable that the Consulate contemplated that adjudication of disputes would occur in a court outside of the United States. Therefore, we believe that the waiver exception is applicable to Joseph's breach of contract and tort claims. Nevertheless, because of the vagueness of the waiver provision at issue, and because the waiver exception should be narrowly construed, we deem it advisable to refer to other FSIA exceptions to immunity to support our finding of jurisdiction.[6]

## B. *The Commercial Activity Exception*

■ The commercial activity exception denies immunity in any case "in which the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2). In determining whether the commercial activity exception applies, the courts focus only on those *specific* acts that form the basis of the suit. *De Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385, 1391 (5th Cir.1985). That is, the courts examine "whether the particular conduct giving rise to the claim in question actually constitutes or is in connection with commercial activity, regardless of the defendant's generally commercial or governmental character." *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1379 (5th Cir.1980). Our discussion of the commercial activity exception will focus on Joseph's breach of contract claim. Thus, we must determine whether the lease agreement, and the alleged breach of that agreement, constituted commercial activities.

The FSIA, somewhat tautologically, defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). The FSIA directs the courts to evaluate the *nature* rather than the *purpose* of the activity in question. *Id.* Thus, a contract to purchase military supplies, although clearly undertaken for public use, is commercial in nature and therefore subject to the commercial activity exception. *McDonnell Douglas Corp. v. Islamic Republic of Iran*, 758 F.2d 341, 349 (8th Cir.), *cert. denied*, 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 294 (1985). Nevertheless, the purpose of an act may be *relevant* in defining its nature: "[o]ften, the essence of an act is defined by its purpose." *De Sanchez*, 770 F.2d at 1393.

---

**6.** In particular, we are uncertain whether the Consulate *knowingly and intentionally* agreed to waive sovereign immunity, or whether under the circumstances in this case such actual knowledge and intent is necessary for the application of the waiver exception. *Compare Marlowe*, 604 F.Supp. at 709 (FSIA does not require "express and unambiguous consent" to jurisdic-

tion) *with Castro v. Saudi Arabia*, 510 F.Supp. 309, 312 (W.D.Tex.1980) (waiver of immunity must be "intentional and knowing"). Although we believe that the lease provision at issue was sufficient to effect an implicit waiver of immunity, we are reluctant to rest our holding—that the district court has jurisdiction over Joseph's basic claims—solely on the waiver exception.

In the instant case, the district court stated that "[c]ommercial activity is defined as the type of act an individual would customarily carry on for profit." The district court concluded that the commercial activity exception did not apply because the Consulate did not contract to be a lessee of the Joseph residential property for profit.

This reasoning is flawed. Some courts have indeed indicated that the commercial activity exception will ordinarily be applied where a sovereign engages in a transaction for profit. *See, e.g. De Letelier v. Republic of Chile*, 748 F.2d 790, 797 (2d Cir.1984) (in determining whether an activity is commercial, "[t]he court must inquire whether the activity is of the type an individual would customarily carry on for profit"), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985); *International Association of Machinists and Aerospace Workers v. Organization of Petroleum Exporting Countries*, 649 F.2d 1354, 1357 (9th Cir.1981) ("[u]nder the FSIA a commercial activity is one which an individual might 'customarily carr[y] on for profit'" (quoting H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 16, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604, 6615)), *cert. denied*, 454 U.S. 1163, 102 S.Ct. 1036, 71 L.Ed.2d 319 (1982). However, there is no indication that Congress intended the presence of a profit motive on the part of the sovereign to be a *threshold requirement* for applying the commercial activity exception. In this regard the Legislative History merely states that "[c]ertainly, if an activity is customarily carried on for profit, its commercial nature could readily be assumed." H.R.Rep. No. 1487, 94th Cong., 2d Sess. 16, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604, 6615. Moreover, the use of profit motive as a threshold requirement for applying the commercial activity exception would be inconsistent with the FSIA's focus on the nature of the transaction at issue rather than its purpose. *See De Sanchez*, 770 F.2d at 1393.

In addition, a transaction need not be made in connection with a business or commercial enterprise operated *by the sovereign* in order to be "commercial" for the purposes of the FSIA. Transactions between strictly governmental entities and commercial enterprises are covered by the commercial activity exception if the role of the sovereign is one which might be played by a private actor. *See Meadows*, 817 F.2d at 523. An activity is public and "noncommercial" if it is one which only a sovereign state can perform. *Id.; MOL, Inc. v. Peoples Republic of Bangladesh*, 736 F.2d 1326, 1329 (9th Cir.) (suit against Bangladesh over termination of licensing agreement for the export of monkeys was not allowable under commercial activity exception), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). Although a contract to purchase goods or services may be presumptively commercial, a contractual activity should not be designated as "commercial" without first examining whether the activity is of a kind in which a private party might engage. *See Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1549 (D.C.Cir.1987).

Applying the principles articulated above, we conclude that, although the lease agreement at issue was not undertaken by the Consulate for profit, it nevertheless was a commercial transaction. *See* H.R. Rep. No. 1487, 94th Cong., 2d Sess. 16, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604, 6615 (government's leasing of property is commercial; contracts to construct a government building and to make repairs on an embassy building are commercial). In renting the Joseph property, the Consulate entered the marketplace as a commercial actor. *Compare De Sanchez*, 770 F.2d at 1394. There is nothing about the lease agreement, or the alleged breach of that agreement, which distinguishes the transaction from an ordinary private commercial transaction, aside from the fact that the Consulate General of Nigeria was the tenant. Neither the Consulate's rental agreement, nor its alleged breach of that agreement, constitute sovereign activities. Therefore, contrary to the district court's decision, Joseph's *breach of contract* claim against Nigeria may be heard pursuant to the commercial activity exception. *See id.* at 1394 & n. 11.

## C. *Tortious Activity Exception*

We find it unnecessary to determine the applicability of the commercial activity exception to Joseph's *tort* claims, in light of our determination that the district court correctly concluded that the FSIA's tortious activity exception applies to these claims.

■ The tortious activity exception provides jurisdiction over tort actions not encompassed in the commercial activity exception "in which money damages are sought against a foreign state for ... damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state." 28 U.S.C. § 1605(a)(5). In order to find that a foreign sovereign can be sued under the tortious activity exception, the court must find: (1) that the tortious acts of individual employees of the sovereign were undertaken within the scope of employment, and (2) that the claim is not based upon the exercise or failure to exercise a discretionary function. *Id.* Both requirements are met in the instant case.[7]

### 1. *Scope of Employment*

■ The "scope of employment" provision of the tortious activity exception essentially requires a finding that the doctrine of respondeat superior applies to the tortious acts of individuals. *See Skeen v. Federative Republic of Brazil,* 566 F.Supp. 1414, 1417–18 (D.D.C.1983). This determination is governed by state law. *Id.* at 1417. In this case, the law of California applies.

Under California respondeat superior doctrine, the determination of whether an employee has committed a tort during the course of employment turns on whether: (1) the act performed was either required or incident to his or her duties, *or* (2) the employee's misconduct could be reasonably foreseen by the employer. *Clark Equip-*

*ment Co. v. Wheat,* 92 Cal.App.3d 503, 154 Cal.Rptr. 874, 882 (1979). Joseph contends that the second "foreseeability" approach is applicable here. We agree.

Throughout this case the defendants have conceded that the Joseph property was occupied as a residence by an authorized consular officer for the purpose of performing consular responsibilities. That is, the defendants have defined the scope of employment to include residence at the Joseph house.

The defendants contest the application of respondeat superior primarily on the ground that the alleged tortious acts at the Joseph house were not foreseeable. We reject this argument. "Foreseeability" as a test for *respondeat superior* merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among the other costs of the employer's business. *Rodgers v. Kemper Construction Co.,* 50 Cal.App.3d 608, 619, 124 Cal. Rptr. 143, 149 (1975). Under this definition, the acts in question were foreseeable. There is nothing unusual or startling about damage done to a house in the course of its occupation.

The defendants also object to the application of respondeat superior to this case because the acts at issue did not benefit Nigeria, and were intentional. However, respondeat superior is applicable to acts that are contrary to the employer's orders, and that are not for the benefit of the employer. *Perez v. Van Groningen & Sons, Inc.,* 41 Cal.3d 962, 227 Cal.Rptr. 106, 109–10, 719 P.2d 676 (1986).[8] In addition, the acts at issue may involve a combination of the employee's personal business with the employer's business. *Perez,* 227 Cal. Rptr. at 110, 719 P.2d at 680. These principles are applicable even in cases of inten-

---

**7.** We reject Joseph's apparent contention that Nigeria can be held liable for waste without regard to the intricacies of the tortious activity exception. *Cf. Merritt v. United States,* 332 F.2d 397, 399 (1st Cir.1964) (plaintiff cannot escape Federal Tort Claims Act requirements by pleading waste).

**8.** Nevertheless, employer authorization and employer benefit are *relevant* to the respondeat superior issue. *See Childers v. Shasta Livestock Auction Yard, Inc.,* 190 Cal.App.3d 792, 235 Cal. Rptr. 641, 647 (1987).

tional torts. *See Perez,* 227 Cal.Rptr. at 109–10, 719 P.2d at 679–80.

In light of California's expansive approach to respondeat superior, we conclude that the individual tortious acts alleged by Joseph were within the scope of employment of the residents of the Joseph house. The damage allegedly caused by the consular employees was a risk inherent in the consular enterprise, under the defendants' broad definition of that enterprise. The defendants cannot avoid responsibility for damage done by its employees in the Joseph house. *See Perez,* 227 Cal.Rptr. at 110, 719 P.2d at 680.

### 2. *Discretionary Function*

In order for the tortious activity exception to be applied to this case, the torts alleged by Joseph must not involve the exercise of discretionary functions. *See* 28 U.S.C. § 1605(a)(5)(A). The existence of a discretionary function under the FSIA is generally analyzed under the principles developed pursuant to the Federal Tort Claims Act's ("FTCA") discretionary function exception. *Olsen v. Government of Mexico,* 729 F.2d 641, 646–47 (9th Cir.), *cert. denied,* 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984). At one time, this circuit distinguished between two types of governmental acts: those at the "planning" level and those at the "operational" level. The former qualified for the discretionary function exception; the latter did not. *See Olsen,* 729 F.2d at 647. This approach was utilized by the district court in finding that the acts in question were not discretionary. However, we have abandoned this approach in FTCA cases, pursuant to the Supreme Court's decision in *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). *See, e.g., Mitchell v. United States,* 787 F.2d 466, 468 (9th Cir.1986) (planning-operational distinction has been abandoned); *Chamberlin v. Isen,* 779 F.2d 522, 524 (9th Cir. 1985) (same); *Begay v. United States,* 768 F.2d 1059, 1062–63 n. 2 (9th Cir.1985) (same).

Pursuant to *Varig,* a two-pronged test has been developed for determining whether the discretionary function exception applies in FTCA cases. First, the court must examine " 'the nature of the conduct, rather than the status of the actor.' " *Begay,* 768 F.2d at 1064 (quoting *Varig,* 467 U.S. at 813, 104 S.Ct. at 2764). Second, the court must inquire whether the governmental acts at issue were " 'grounded in social, economic, and political policy.' " *Id.* In other words, the court should avoid second-guessing policy decisions through the medium of a tort action. *Id.* The execution of policy decisions by subordinates, even those subordinates at the operational level, comes under the discretionary function exception if the acts involved the exercise of policy judgment. *Red Lake Band of Chippewa Indians v. United States,* 800 F.2d 1187, 1196 (D.C.Cir.1986).

The application of the *Varig* approach to FSIA cases is ably discussed in *MacArthur Area Citizens Association v. Republic of Peru,* 809 F.2d 918 (D.C.Cir.), *amended on other grounds,* 823 F.2d 606 (D.C.Cir. 1987). The factual situation in *MacArthur* is somewhat similar to the case at issue. Peru purchased a building in an area zoned for residential use, and proceeded to convert the property into a chancery. Primarily for security reasons, Peru put bricks and bars over various parts of the building, established an elaborate alarm system, and installed harsh fluorescent lights. *Id.* at 919. Because of the unsightly nature of the results, a neighborhood association sued for damages. The district court dismissed the suit on the ground of sovereign immunity, and the court of appeals affirmed pursuant to, inter alia, the FSIA's discretionary function exception.

The court stated that "establishing a chancery ... to conduct foreign relations is a discretionary public policy decision and ... this decision undergirds the specific acts which the Association bewails." *Id.* at 922. The court found that the decisions to purchase and modify the chancery building were made in order to implement the determination to establish the chancery. The court concluded that these implementing decisions involved a measure of policy judg-

ment and were thereby protected by the discretionary function exception. *Id.* at 922–23. Specifically, the court stated that the implementing decisions at issue: "(1) [were] grounded in an economic judgment regarding which property represents the best value; or (2) embodie[d] a political decision regarding the image that the Peruvian Government seeks to project through the offices it occupies; or (3) reflect[ed] security considerations...." *Id.* at 923. In sum, the actions taken by Peru were intimately connected with policy decisions made by a sovereign, and were therefore discretionary.

*MacArthur* indicates that the *acquisition and operation* of the Joseph residence by the Consulate was a discretionary policy decision. However, *MacArthur* does not indicate that the purely destructive acts which give rise to Joseph's tort claims were discretionary. Destruction of property can hardly be considered as part of a policy decision to establish a consular residence. Nor will the exercise of jurisdiction over the instant lawsuit encroach on the ability of foreign sovereigns to make policy decisions regarding their consular buildings. *See Liu v. Republic of China,* 642 F.Supp. 297, 305 n. 7 (N.D.Cal.1986). We therefore conclude that the discretionary function exception does not apply to Joseph's tort claims.

In sum, all of the requirements of the tortious activity exception are met in this case. The district court has jurisdiction over Joseph's tort claims against Nigeria and the Consulate.

#### D. *Immovable Property Exception*

Because we have already determined that the district court has jurisdiction over Joseph's breach of contract and tort claims against Nigeria and the Consulate, we find it unnecessary to decide whether the FSIA's immovable property exception is applicable to this case.

### II. *Consular Immunity*

Jurisdiction by the district court over consular official Olalandu is premised on 28 U.S.C. § 1351, which states that "[t]he district courts shall have original jurisdiction ... of all civil actions and proceedings against—(1) consuls or vice consuls of foreign states." However, the district court does not have jurisdiction over Olalandu if he is protected by consular immunity. We review de novo the district court's conclusion that it does have subject matter jurisdiction over Joseph's tort claims against Olalandu. *See Gerritsen,* 819 F.2d at 1515.

The consular immunity of Olalandu is governed by the Vienna Convention. *See id* at 1515–16. Under article 43 of the Vienna Convention, consular officials are subject to the jurisdiction of the receiving state except "in respect of acts performed in the exercise of consular functions." 21 U.S.T. at 104. Article 5 of the Vienna Convention defines the term "consular function." Articles 5(a)–5(1) list twelve specific consular functions. Article 5(m), a "catch-all" provision, defines "consular function" to include "any other functions entrusted to a consular post by the sending State which are not prohibited by the laws and regulations of the receiving State." 21 U.S.T. at 82–85.

We conclude that the tortious acts alleged by Joseph were not "performed in the exercise of" Olalandu's consular function as a resident of the Joseph house, or of any of Olalandu's other consular functions. *Cf. Heaney v. Government of Spain,* 445 F.2d 501, 505 (2d Cir.1971) (because consular representative acted in the exercise of consular function in entering into contract, article 5(m) immunized representative from breach of contract suit). The "exercise" of a consular function necessarily implies an attempt by an employee to perform his or her consular duties successfully. *See Commonwealth v. Jerez,* 390 Mass. 456, 457 N.E.2d 1105, 1108–09 (1983). The district court correctly found that no public interest or function of the Consulate or Nigeria was furthered by the allegedly tortious acts performed by Olalandu. There-

fore, the district court has jurisdiction over Joseph's tort claims against Olalandu.[9]

### III. *The Default Judgment*

In light of the district court's finding of jurisdiction over Joseph's lawsuit in its opinion of August 12, 1986, Joseph contends that the district court abused its discretion in failing to reinstate the default judgment that was entered in September 1985 and set aside on March 19, 1986.[10] Joseph argues that she should be allowed to appeal the March 19 set aside as part of this interlocutory appeal. We disagree.

A district court's *grant* of a motion to set aside a default judgment is not an appealable final order, where the setting-aside paves the way for a trial on the merits. *See Dimmitt & Owens Financial, Inc. v. United States*, 787 F.2d 1186, 1192 (7th Cir.1986); *Parks v. Collins*, 761 F.2d 1101, 1104 (5th Cir.1985); *Murphy v. Helena Rubenstein Co.*, 355 F.2d 553, 553 (3d Cir.1965). *But see Thorpe v. Thorpe*, 364 F.2d 692 (D.C.Cir.1966). Therefore, in the instant case, the district court's order setting aside the default judgment is not appealable. Our decision to hear an interlocutory appeal regarding the district court's jurisdiction over the defendants provides no basis for reaching Joseph's claim that the district court's order setting aside the default judgment was improper.

### CONCLUSION

The district court has jurisdiction under the FSIA over Joseph's breach of contract and tort claims against Nigeria and the Consulate. We REVERSE the district court's determination that Joseph's breach of contract claims cannot be heard pursuant to the waiver or commercial activity exceptions. We AFFIRM the district court's determination that Joseph's tort claims can be heard pursuant to the tor-

tious activity exception. We also conclude that the waiver exception is applicable to Joseph's tort claims.

In addition, the district court is not precluded by the Vienna Convention from hearing Joseph's tort claims against Olalandu. The district court's decision to that effect is AFFIRMED.

Joseph's request for attorney's fees on this appeal is denied. Joseph argues that she is entitled to attorney's fees pursuant to the lease provision which states that "the prevailing party [in an action at law or equity] shall be entitled to recover attorney's fees as fixed by the court." At this stage of the proceedings it is premature for us to determine who is the prevailing party as to Joseph's breach of contract and tort claims.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.

---

9. This determination does not conflict with our conclusion pursuant to the tortious activity exception of the FSIA that Olalandu and the other consular employees residing at the Joseph house acted within the scope of their employment in committing the alleged torts. The terms *"scope* of employment" and *"exercise* of a consular function" are not coterminous. The former, governed by California law, does not require the acts at issue to further an employer's interests. The latter, which is not governed by

California law, concerns acts in support of an employee's consular duties.

10. Default judgments are governed by Fed.R. Civ.P. 55. Rule 55(c) states that a district court may set aside a default judgment in accordance with Fed.R.Civ.P. 60(b). Under Rule 60(b)(6), a district court may set aside a judgment for "any ... reason justifying relief from the operation of the judgment."