ECKERT INTERNATIONAL, INCORPORATED, Plaintiff–Appellee,

v.

The GOVERNMENT OF the SOVEREIGN DEMOCRATIC REPUBLIC OF FIJI, Defendant–Appellant.

No. 93–1985.

United States Court of Appeals, Fourth Circuit.

Argued April 12, 1994.

Decided Aug. 5, 1994.

---

**ARGUED:** Stephen Laurence Joseph, Washington, DC, for appellant. Joseph B. Tompkins, Jr., Sidley & Austin, Washington, DC, for appellee. **ON BRIEF:** Nelson J. Kline, Washington, DC, for appellant. David M. Krasnostein, Christopher R. Drahozal, Sidley & Austin, Washington, DC, for appellee.

Before WILKINSON, Circuit Judge, BUTZNER, Senior Circuit Judge, and GODBOLD, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

Affirmed by published opinion. Senior Judge GODBOLD wrote the opinion, in which Judge WILKINSON and Senior Judge BUTZNER joined.

## OPINION

GODBOLD, Senior Circuit Judge:

The Government of Fiji, a foreign state, entered into an agreement with Eckert International, Inc., a United States corporation. Fiji canceled the contract, and Eckert sued for breach in federal court in Virginia. Fiji asserted sovereign immunity, and the district court held that it had waived immunity, 834 F.Supp. 167. Fiji appeals. We review the matter de novo, reach the same conclusion as the district court, and affirm.

### Facts

In 1988 the Government of Fiji entered into a three-year agreement with Eckert, the owner and president of which, Fred J. Eckert, is a former ambassador to Fiji. Under the agreement Eckert was to serve as consultant to Fiji in representing its interests with specified agencies of the federal government, and with other governments, and with the tourism industry, promote the political, economical and cultural objectives of Fiji in the United States, and prepare a public relations program designed to restore Fiji's image. In return Fiji was to pay Eckert $250,-000 per year. The agreement contained the following choice of law provision:

> In the event of any controversy, this Agreement shall be construed and interpreted according to the laws of the state of Virginia in the United States which is the official corporate headquarters of Eckert Associates, Inc.[1] at the time of any such need of legal interpretation.

(footnote added). Both parties satisfactorily performed their duties under the agreement for the three year period. In 1991 the agreement was renewed for another three years. In November 1992 Fiji informed Eckert that it had decided to terminate the 1991 agreement.

Eckert sued Fiji in the U.S. District Court, E.D.Va., pursuant to 28 U.S.C. § 1330(a), which establishes jurisdiction over a nonjury civil action against a foreign state as to any claim for relief with respect to which the foreign state is not entitled to sovereign immunity. Eckert sought damages for wrong-

---

1. Eckert International, Inc., was initially known as Eckert Associates, Inc.

ful repudiation and breach of the 1991 agreement. Fiji moved to dismiss on the basis of sovereign immunity, the act of state doctrine, and the political question doctrine. The latter two grounds spring from contentions by Fiji that Fred J. Eckert was to personally perform the services required of the corporation and that he was no longer complying with a requirement of the contract that he be politically loyal and faithful to the Fiji government and instead is loyal to a political adversary of the Prime Minister of Fiji. The district court held that Fiji had waived sovereign immunity and that the act of state and political question doctrines did not apply.

■ We review only Fiji's assertion that the district court erred in denying it sovereign immunity. Orders denying sovereign immunity are immediately appealable collateral orders. *See Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines,* 965 F.2d 1375, 1379 n. 4 (5th Cir.1992); *Compania Mexicana De Aviacion, S.A. v. U.S. Dist. Court.,* 859 F.2d 1354, 1358 (9th Cir.1988); *Segni v. Commercial Office of Spain,* 816 F.2d 344, 347 (7th Cir.1987). We do not reach other issues raised by Fiji because the district court denied Fiji's motion to certify them under 28 U.S.C. § 1292(b).

### Discussion

■ The existence of subject matter jurisdiction under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et seq.,* is a question of law. *Siderman de Blake v. Republic of Argentina,* 965 F.2d 699, 706 (9th Cir.1992), *cert. denied,* ─── U.S. ───, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993). Thus, we review the district court's denial of sovereign immunity de novo. *See Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238, 241 (2d Cir.1994).

■ The FSIA establishes the scope of the sovereign immunity of foreign states in U.S. courts. Under that Act a foreign state is immune from the jurisdiction of U.S. courts unless one of the listed exceptions in §§ 1605 and 1607 applies. 28 U.S.C. § 1605(a)(1) provides:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;....

The district court found that Fiji waived its immunity by implication when it agreed to the choice of law provision contained in the consulting contract. The court also found that Fiji had no immunity because, under 28 U.S.C. § 1605(a)(2), the action was based upon a commercial activity carried on in the United States; it is not necessary for us to address this ground.

The House Report accompanying the passage of the FSIA provides three examples of implied waivers under § 1605(a)(1):

With respect to implicit waiver, the courts have found such waivers in cases where a foreign state has agreed to arbitration in another country or *where a foreign state has agreed that the law of a particular country should govern a contract.* An implicit waiver would also include a situation where a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity.

H.R.Rep. No. 1487, 94th Cong., 2d Sess. 18 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617 (emphasis added). Citing this legislative history, a number of cases have held that various choice of law provisions in contracts constitute implied waivers of sovereign immunity. *See Marlowe v. Argentine Naval Comm'n,* 604 F.Supp. 703, 709 (D.D.C.1985) (defense of sovereign immunity waived because foreign state agreed that contract would be "governed by and construed in accordance with the laws of the District of Columbia"); *Resource Dynamics Int'l, Ltd. v. General People's Committee for Communications and Maritime Transp. in Socialist People's Libyan Arab Jamahiriya,* 593 F.Supp. 572, 575 (N.D.Ga.1984) (implicit waiver by provision saying "[t]his Agreement and the performance or breach hereof shall be governed by the procedural and substantive laws in effect in the State of Virginia.").

Several circuit courts have cited in dicta the legislative history and recognized that an agreement to be governed by the laws of the U.S. or its states constitutes an implied waiver under § 1605(a)(1). *See, e.g., Rodriguez v. Transnave Inc.,* 8 F.3d 284, 287 (5th Cir. 1993); *Drexel Burnham Lambert Group Inc. v. Committee of Receivers for A.W. Galadari,* 12 F.3d 317, 325 (2d Cir.1993); *Frolova v. Union of Soviet Socialist Republics,* 761 F.2d 370, 377 (7th Cir.1985). In *Transamerican Steamship Corp. v. Somali Democratic Republic,* 767 F.2d 998 (D.C.Cir.1985), the D.C. Circuit held that the Somali Democratic Republic ("SDR") could not claim sovereign immunity because it had carried on a commercial activity in the U.S., within the meaning of § 1605(a)(2). Circuit Judge Patricia M. Wald, concurring in the judgment, wrote separately to express her view that an implicit waiver of sovereign immunity should have been found under § 1605(a)(1). The Agency for International Development ("AID") had approved a $20 million famine relief program, under 7 U.S.C. § 1721, to ameliorate starvation and malnutrition in Somalia. AID and the Somali government executed a Transfer Authorization Agreement to implement the program, which specifically incorporated by reference the provisions of AID Regulation 11, under which the commodities shipped must be admitted duty free and exempt from all taxes. Judge Wald thought that "SDR's contractual agreement to be bound by regulation 11 ... waives sovereign immunity in an action for damages allegedly caused by the SDR's violation of regulation 11." *Id.* at 1005 (Wald. J., Concurring). Citing the House Report, she explained that Congress believed that "after making ... a promise [that an agreement be governed by U.S. law], the foreign country could not equitably deny that voluntarily assumed obligations under United States law were enforceable against it." *Id.* at 1006.

Several reasons undergird our analysis for holding that the choice of law provision constitutes an implied waiver of Fiji's sovereign immunity: (1) identification of the forum best able to address the issues; (2) the implied intent of the parties; and (3) the pragmatic assessment of fairness made by the Congress. With respect to the best qualified forum Judge Wald observed: "The courts of this country are clearly best able to interpret and apply the laws of this country." *Id.* at 1006. The parties in this case agreed to look to Virginia law. The Virginia courts are the forum that can best give that guidance. A court of another country would face the task of identifying the Virginia law, and then of both construing and applying it pursuant to Virginia principles. Efforts to determine and apply foreign law often involve reference to secondary sources and to competing testimony of experts concerning the content of the law of a jurisdiction far distant and possibly differently structured.

Second, the implicit intent of the parties was that Virginia shall be the forum. As just pointed out, the parties made an agreement to look to Virginia law. It flies in the face of logic· that they would expect to find that guidance in the courts of another country. *Joseph v. Office of Consulate General of Nigeria,* 830 F.2d 1018 (9th Cir.1987), *cert. denied* 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988), concerned a lease by Nigeria of a house in San Francisco to be used as a residence by employees of the Nigerian Consulate and their families. The landlord sued for compensation for damages caused to the house and its grounds. The relevant lease provision stated:

> In the event that any action shall be commenced by either party hereto arising out of, or concerning this lease or any right or obligation derived therefrom, then in addition to all other relief at law or equity, the prevailing party shall be entitled to recover attorney's fees as fixed by the court.

830 F.2d at 1022. The court based its decision in part on implied waiver of sovereign immunity but supported its conclusion of jurisdiction on the basis of other FSIA exceptions. *Id.* at 1023. The court found "it is virtually inconceivable that the Consulate contemplated that adjudication of disputes would occur in a court outside of the United States." *Id.* at 1023. The court in that case considered that the transaction was wholly local in nature. In the case before us Virginia has substantial local contacts. It is the state of the plaintiff's incorporation and of its home office. A major part of plaintiff's

duties under the contract necessarily would be carried out in Virginia and the District of Columbia—representing Fiji in dealings with the Congress, the Department of State. the United States Agency for International Development, the Department of Defense, and other agencies of the United States.

Third, our analysis is supported by a pragmatic recognition of matters of fairness in determining the rights of parties arising from agreements having international character. Judge Wald has described the attitude of the United States Congress in enacting the FSIA. She pointed out the history of agreements to arbitrate that predated the FSIA.

> Courts were reluctant to permit a foreign country, after explicitly promising that it would resolve disputes before a designated tribunal in the United States, suddenly to assert after the fact that it could be held responsible for its actions, if at all, only in its own courts.

767 F.2d at 1006. Then she described the congressional response:

> Congress obviously thought that similar reasoning supports finding a waiver of sovereign immunity when a foreign country agrees to the application of United States law. Congress evidently believed that after making such a promise, the foreign country could not equitably deny that voluntarily assumed obligations under United States law were enforceable against it. Of course, a foreign country's duties under United States law might theoretically be enforced in the foreign country's own courts. But Congress could reasonably have been skeptical that, in general, a foreign country resisting application of United States law in United States courts would be likely to yield to relief in its own courts. The courts of this country are

clearly best able to interpret and apply the laws of this country.

*Id.* Judge Wald concluded:

> In the House Report, Congress declared that a foreign government may not assume duties generally under United States law, only to disclaim them by invoking immunity in United States courts when a controversy arises. I believe that when a foreign government assumes specific duties under United States law, it is similarly barred from denying vulnerability to suit under the provisions of law agreed to.

*Id.*[2]

Fiji seeks to distinguish the choice of law provision in this case from those held to constitute implied waivers of sovereign immunity in other cases on the ground that it only points to Virginia law as a source or aid to the parties in performing and interpreting the contract and does not state that the agreement is to be "governed" or "controlled" by Virginia law, or that the parties" agree to be bound" by Virginia law. The district judge rejected this theory in his oral statement of reasons from the bench:

> If, as the legislative history reflects, and as the case has reflect [sic], the governing law provisions are construed as waivers, then simply to say that it's to be interpreted by or construed under the law of Virginia if a dispute arises in this Court's view is no different from saying it's to be governed by.

Appendix p. 182. The judge spelled this out further in his written opinion:

> The FSIA choice of law waiver principle is based on the sensible notion that a choice of law provision specifically agreed to in a contract signals a foreign state's agreement to be sued on the contract. In this connection, it makes no difference whether the contract states it is "governed" by Virginia law or that it is to be "interpret-

---

**2.** Our decision rests on implied waiver. A rational argument can be made that the phrase of the choice of law provision "in the United States" is an explicit waiver of sovereign immunity. On the one hand the phrase may be merely descriptive of the state of Virginia as the jurisdiction whose laws are referred to (a somewhat dubious argument since all know that Virginia is in the United States). Or it may be a specific

description of the geographical territory where courts are located in which construction and interpretation may be sought, i.e., anywhere in the United States. It is not necessary for us to decide whether "in the United States" is an express waiver. At the least, the phrase adds substantial support to our conclusion that there is an implied waiver.

ed" in accordance with Virginia law. This difference in language cannot bear the weight of Fiji's argument. Indeed, no case cited by Fiji or found by the Court holds or suggests that a contractual choice of law provision that uses the term "govern" is a valid FSIA waiver, while one that uses the terms "interpret" or "construe" is not. Nor is this surprising for both choice of law formulations invite the inference that the parties, including the foreign state, contemplate legal enforcement of the contract. Were this not so, a choice of law provision would be unnecessary.

Appendix p. 193–94 (footnote omitted).

We agree with the district court that decision of this case is not controlled by the fact that the agreement does not state that the law of a particular jurisdiction shall "govern" or that the parties shall be "bound" but rather that the law of a particular jurisdiction shall be the source for construction and interpretation. Each of these articulations recognizes power over the agreement, and from that recognition there is drawn an implication of waiver relating to the exercise of power. In *Joseph* the Ninth Circuit recognized that sovereign immunity was clearly waived where the contract specifically states that the laws of a jurisdiction within the United States are to "govern the transaction," *id.* at 1022. But it rejected the argument that a statement describing the law that will "govern" a dispute is a prerequisite for the waiver exception. *Id.* at 1023. In the present case it is difficult to discern any substantial difference between a concept that Virginia law will "govern" a dispute between the parties and the concept that, in the event of controversy when legal interpretation is needed, the agreement shall be construed and interpreted according to Virginia law.

Finally, Fiji contends that if instead of referring to Virginia's law as the source of construction and interpretation the parties had actually spelled out relevant definitions and meanings in the agreement itself there would not have been a submission to jurisdiction. Judge Wald addressed this argument in *Transamerican:*

> [B]y agreeing to observe regulation 11, the SDR assumed duties significantly different from those it would have undertaken if the text of regulation 11 had simply been written into the Transfer Authorization Agreement without any reference to any particular law. Had the regulation merely been written into the contract, the interpretation of its text would present an ordinary problem of contract law. But by expressly agreeing to the "terms and conditions ... of AID Regulation 11," R.E. at 47, the SDR implicitly acknowledged that regulation 11 would apply as that regulation is understood in the law of the United States.

767 F.2d at 1006. In short, Fiji may be right in its contention but it makes no difference in this case.

*AFFIRMED.*