Brian LOGAN, Plaintiff,

v.

Lionel Alain DUPUIS, Defendant.

No. Civ.A. 97–598–LFO.

United States District Court,
District of Columbia.

Dec. 19, 1997.

Vanessa Carpenter Lourie, Carpenter Lourie & Associates, P.C., Washington, DC, for plaintiff.

## MEMORANDUM

OBERDORFER, District Judge.

An Order filed August 22, 1997 stated that "unless defendant Lionel Alain Dupuis files an opposition to the Motion to Reinstate Complaint on or before September 1, 1997, the Motion will be treated as conceded and default will be reinstated." This Memorandum explains that Order and the reasons it must now be vacated.

### I.

According to his complaint, plaintiff Logan owns residential property in the District of Columbia, which he agreed to lease to defendant Dupuis, a Canadian citizen and the Al-

ternative Representative of Canada at the Permanent Mission of Canada to the Organization of American States.[1] A copy of the November 28, 1994 lease is attached to the complaint. It states, *inter alia*, that the term of the lease is January 1, 1995 to December 31, 1998. It also contains a "Diplomatic Clause" which provides:

> Should the Lessee by reason of his official duties be transferred from the District of Columbia, and/or the Washington area by order of the Canadian Government or cease to be an employee of the Canadian Foreign Service and/or of the Government of Canada, this Lease shall be terminated on a rent date upon giving sixty (60) days advance notice to the Lessor in writing.

The Diplomatic Clause is contained in a special addendum to the lease entitled: "Addendum to the Lease Agreement Signed By Brian Logan, Landlord and Lessor, and Lionel Alain Dupuis, Alternate Representative of Canada At the Organization of American States, Washington, D.C., Lessee and Tenant, Signed at the Embassy on November 28, 1994."

According to the complaint, Dupuis notified Logan on January 26, 1994 that he planned to vacate the property by March 31, 1996, pursuant to the Diplomatic Clause of the lease. However, Logan now alleges that Dupuis was not in fact transferred from the Washington, D.C. area, a prerequisite for invoking the Diplomatic Clause, nor did he meet other requirements for early termination of the lease. Logan also alleges that Dupuis violated other miscellaneous provisions of the lease.

█ This would be a garden-variety breach of contract case, but for the diplomatic status of Dupuis, which potentially shields him from the personal jurisdiction of this Court.[2]

## II.

The question of diplomatic immunity has raised both procedural and substantive complications in this case. With respect to procedure, Dupuis was duly served with the complaint on May 14, 1997, but has not filed an answer or other pleading, and apparently has no intention of doing so.[3] On June 4, 1997, a three-page document was filed with the Court by unknown persons, which contained a certification from the Assistant Chief of Protocol of the Department of State that (1) defendant Dupuis is a diplomatic agent entitled to the privileges and immunities set forth in the Vienna Convention on Diplomatic Relations, 23 U.S.T. 3227;

1. All facts in this Memorandum are drawn from the complaint, as the defendant has filed no pleading. In contrast to the complaint, the lease attached thereto describes Dupuis's title as *Alternate* Representative.

2. Subject matter jurisdiction appears to lie through 28 U.S.C. § 1351, which vests in federal district courts original jurisdiction over "all civil actions and proceedings against ... (2) members of a mission or members of their families (as such terms are defined in section 2 of the Diplomatic Relations Act.)." An Agreement between the United States and the Organization of American States, 26 U.S.C. 1026 (Mar. 20, 1975), authorized by 22 U.S.C. 288g, provides that representatives of OAS member states and their staffs are entitled to "the same privileges and immunities in the United States, subject to corresponding conditions and obligations, as the United States accords to diplomatic envoys who are accredited to it." Whether federal subject matter jurisdiction is cast as a privilege or an obligation, it applies to suits involving members of a diplomatic mission to the United States, and thus appears to apply to Dupuis by virtue of the Agreement.

Contrary to plaintiff's assertion in his Motion to Reinstate Complaint, the Foreign Sovereign Immunities Act (FSIA) is inapplicable to the instant action, where the complaint contains no indication that Dupuis entered the lease on behalf of the government of Canada. The FSIA does not confer jurisdiction over foreign diplomats as such, but is the source of federal jurisdiction over suits involving foreign states or their instrumentalities. *See Joseph v. Office of the Consulate General of Nigeria* 830 F.2d 1018 (9th Cir.1987), *cert. denied* 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (FSIA governs landlord-tenant dispute where premises leased on behalf of foreign consulate; immunity of consular officer is determined by Vienna Convention on Consular Relations).

3. *See* August 7, 1997 Letter from Mary Catherine Malin, Office of the Legal Adviser, Department of State, docket no. 10-1 ("We understand that neither the government of Canada nor Mr. Dupuis intend to take action with respect to [the] above referenced case....")

T.I.A.S. 7502; 500 U.N.T.S. 95, and (2) the government of Canada does not intend to waive any immunity enjoyed by Dupuis. However, such document was apparently never served upon the plaintiff, *see* Pl's Mot. to Reinstate at 1, who, in accordance with Rule 55 of the Federal Rules of Civil Procedure, filed an affidavit in support of default on June 19, 1997. Default was entered by the Clerk of the Court that day, and on June 27, 1997, plaintiff moved for default judgment.

A Memorandum & Order of July 11, 1997 noted that Dupuis had asserted diplomatic immunity on June 4, 1997, and that plaintiff's motion provided no reason why such immunity did not obtain under the Vienna Convention; accordingly, the motion for entry of default judgment was denied, and the complaint was dismissed without prejudice. On July 25, 1997, however, plaintiff Logan filed a motion to reinstate the complaint, stating that he had been unaware of the defendant's assertion of immunity, and arguing on several grounds that the defendant's diplomatic status does not confer immunity in the context of this lawsuit.

Shortly thereafter, on August 7, 1997, the Court (and the plaintiff) received a letter from the Office of the Legal Adviser at the Department of State, to which was attached a second certification of immunity from the Assistant Chief of Protocol. The certification, like that filed on June 4, 1997, stated that Dupuis is a diplomatic agent who is accorded "privileges and immunities as provided in the Vienna Convention on Diplomatic Relations." The certification included, *inter alia*, an excerpt of Article 31 of the Convention, which provides that:

1. A diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving State. He shall also enjoy immu-

nity from its civil and administrative jurisdiction, except in the case of:

(a) a real action relating to private immovable property situated in the territory of the receiving State, unless he holds it on behalf of the sending State for the purposes of the mission;

. . . . .

(c) an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions;

. . . . .

However, neither the letter nor the attached certification addressed plaintiff's contention that the Convention, by its own terms, does not shield defendant from the instant suit.[4]

Relying on the State Department certification that the defendant's immunity is governed by the Convention, and noting the exception in Article 31 for "a real action relating to private immovable property"—a provision previously called to the Court's attention by plaintiff in his motion to reinstate the complaint—a Memorandum & Order of August 22, 1997 stated that "unless defendant Lionel Alain Dupuis files an opposition to the Motion to Reinstate Complaint on or before September 1, 1997, the Motion will be treated as conceded and default will be reinstated." There have been no subsequent filings by Dupuis or by the Department of State.

## II.

The failure of Dupuis to answer the complaint or to respond directly to plaintiff's motion may be based on sound diplomatic policy,[5] but it has unfortunately hampered

---

4. For this reason, the State Department letter is taken to be a certification of diplomatic status, rather than a suggestion of immunity. *See Restatement (Third) of Foreign Relations* § 464 cmt. f (1987) (noting that in addition to certifying a person's diplomatic status, the State Department "will sometimes 'suggest' whether immunity should be granted *in the circumstances*" of a particular case, and that "such a suggestion is [ ] binding on the courts") (emphasis supplied).

5. The August 7, 1997 letter from the State Department states: "We understand that neither the government of Canada nor Mr. Dupuis intend to take action with respect to [the] above referenced case, as the government of Canada maintains the position that the receiving state is obligated to take the necessary measures to protect the immunity of diplomatic envoys accredited to it. In reciprocal situations abroad, the United States requests the foreign ministry certi-

the resolution of the immunity issue in this court, where "the self-interests of the adversaries are relied upon to provide the foundation for sound adjudication." *See 13A* Wright, Miller & Cooper, *Federal Practice & Procedure,* 2d. Civil § 3530 (1984). Here, while the parties appear to agree that the Vienna Convention on Diplomatic Relations defines the scope of immunity to which Dupuis is entitled, only the plaintiff has advanced an interpretation of the Convention as it applies to the present case. Specifically, plaintiff argues that his suit—which pertains to lease of residential property by defendant in the District of Columbia—falls within the exception to diplomatic immunity contained in Article 31(1)(a) of the Convention for "a real action relating to private immovable property situated in the territory of the receiving State." Unchallenged by the defendant, plaintiff's reading of the Convention appeared, on the basis of plain language, to be correct, and was thus adopted in the Memorandum & Order of August 22, 1997.

However, further research suggests that plaintiff's interpretation of Article 31(1)(a) is inaccurate. While few courts (and, apparently, none in the United States) have had occasion to address the issue, treatises on the law of diplomatic immunity suggest that the term "real action" as used in Article 31(1)(a) does not encompass all civil suits pertaining to real property. One of the leading commentaries on the Convention states:

> The essence of the term 'real action' is that the relief sought is either a declaration of title to the property, an order for sale by authority of the court, or an order for possession. The term is used in the sense of an action in rem, and the action in rem is given the sense which it has in many civil law jurisdictions, which, unlike English law, allow proceedings in rem in respect of immovable property.

Eileen Denza, *Diplomatic Law* 159–60 (1976). *See also* Charles J. Lewis, *State and Diplomatic Immunity* 139 (3d ed. 1990)

("[I]t appears from the commentators that 'action reélle' in the original text of the Convention is an action where the ownership or possession of land is in question, and therefore it would be straining the meaning to say that a claim to effect repairs, as opposed to one to take over possession of the premises, was a real action.") While plaintiff's suit concerns real property, it is essentially a breach-of-contract claim, rather than a dispute over title or possession that would normally give rise to *in rem* jurisdiction. *Cf. Agostini v. De Antueno,* 199 Misc. 191, 99 N.Y.S.2d 245 (1950) (holding that court has in rem jurisdiction over action to recover possession of real property held by a diplomat) (pre-Convention opinion).

A treaty is to be interpreted "in accordance with the ordinary meaning to be given to the terms of the treaty in their context and in light of its object and purpose." Vienna Convention on the Law of Treaties, art. 31(1), May 23, 1969, 1155 U.N.T.S. 331 (entered into force January 27, 1980), reprinted in 8 I.L.M. 679 (1969).[6] In this case, the term "real action" has an ordinary legal meaning that does not include breach-of-contract actions. *See* Black's Law Dictionary (6th ed. 1991) (A real action, "[a]t common law, [was] one brought for the specific recovery of lands, tenements, or hereditaments.... Among [civil law countries], real actions, otherwise called 'vindications,' were those in which a man demanded something that was his own."). There is no evidence that parties to the Convention intended to attribute any special meaning to the term apart from its historical definition. Denza at 161. By contrast, plaintiff's position rests on reading "real action" to mean "action relating to real property," an interpretation so broad as to encompass not only suits involving rental leases, but any dispute—a claim concerning construction and repair work, an insurance coverage dispute, a personal injury action—somehow related to a piece of real property. Such an expansive reading of "real action" is inconsistent with Article 31

fy directly to the local court the immunity of U.S. diplomats."

**6.** Although the United States is not a party to the Vienna Convention, it regards the substantive provisions of the Vienna Convention (and specifi-

cally, Article 31) as codifying the customary international law of treaties. *See* Restatement (Third) of The Foreign Relations Law of The United States, Part III, introductory note (1986).

as a whole, which provides diplomats with general immunity from civil jurisdiction, subject to only three exceptions. The purpose of the Convention as stated in the preamble—"to ensure the efficient performance of the functions of diplomatic missions"—confirms that the exceptions to diplomatic immunity should be read narrowly.

In sum, plaintiff's suit for breach of a real estate rental contract does not constitute a "real action relating to private immovable property;" thus, Article 31(1)(a) of the Convention provides no basis for an exercise of this Court's jurisdiction.

### III.

■ Plaintiff also asserts that his suit falls within another exception to the general immunity conferred by Article 31 of the Convention, that contained in paragraph 1(c): "an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions." In support of this proposition, plaintiff cites *Joseph v. Office of Consulate General*, 830 F.2d 1018 (9th Cir.1987), contending that

> the court ... found that the rental of a private residence for a consular officer fell within the exception set forth in Article 31, at paragraph 1.(c). That court found that the consular [sic] had entered the market place as a commercial actor, and that neither the rental agreement nor the alleged breach of that agreement constituted sovereign activities for which he would otherwise be immune from civil lawsuits.

Pl's Mot. to Reinstate. at 4.

Plaintiff misreads *Joseph*, which makes no mention of Article 31(1)(c), but is based instead on the "commercial activity" exception to the Foreign Sovereign Immunities Act, which governs the jurisdictional immunity of foreign *states*, rather than individual foreign diplomats.[7] *See* 28 U.S.C. § 1603 *et seq.* While the reasoning of the *Joseph* court could conceivably be applied to interpret Article 31(1)(c) by analogy, another circuit court has recently examined the parameters of Article 31(1)(c) directly. In *Tabion v. Mufti*, 73 F.3d 535 (4th Cir.1996), the Fourth Circuit addressed whether the employment of a domestic servant by a foreign diplomat constituted "commercial activity" for purposes of Article 31(1)(c), such that the employment relationship could be the subject of a civil suit in a U.S. court. After considering the term in the context of the Convention as a whole, with regard for the interpretation of "commercial activity" advanced by the State Department both prior to and after ratification of the Convention by the United States, the *Tabion* court held that contracts for goods and services "incidental to [a diplomat's] daily life" do not fall within the scope of the "commercial activity" exception of Article 31(1)(c). 73 F.3d at 538–39. Moreover, the *Tabion* court explicitly declined to use the "commercial activity" exception of the Foreign Sovereign Immunities Act as an interpretative guide to Article 31(1)(c) of the Convention, on grounds that it is a domestic statute rather than a treaty, that it was not a textual source for the Convention, and that Congress did not intend the Act to affect diplomatic immunity under Convention. *Id.* at 539 n. 7.

The *Tabion* analysis of Article 31(1)(c) is both germane and persuasive.[8] The defendant's efforts to secure housing for himself, albeit through a commercial transaction, do

---

7. The Foreign Sovereign Immunities Act has no bearing on the instant case, where plaintiff has not alleged that the defendant was renting property on behalf of the government of Canada. *See* note 2 *supra*. A second portion of the *Joseph* opinion—not related to the "commercial activity" exception—is indeed based on the "Vienna Convention," but it is the Vienna Convention on *Consular* Relations, 21 U.S.T. 77, T.I.A.S. 6820, 596 U.N.T.S. 261, which provides for a much more limited immunity than that accorded to diplomatic agents. *See Restatement (Third) of Foreign Relations* § 465 cmt. a ("The principal difference [between the immunities of diplomatic agents and those of consular officers] is that ... a consular officer's immunity from ... civil process is not general, but applies only to acts or omissions in the performance of his official functions.").

8. It is also consistent with the principles of treaty interpretation outlined in Article 31 of the Vienna Convention on the Law of Treaties, May 23, 1969, 1155 U.N.T.S. 331 (entered into force January 27, 1980), reprinted in 8 I.L.M. 679 (1969), although that treaty is not explicitly invoked by the court.

not constitute "professional or commercial activity exercised by [a] diplomatic agent," as contemplated by Article 31(1)(c). Thus, they are not excepted from the general immunity from civil jurisdiction accorded to diplomatic agents under the Convention.

## IV.

 Notwithstanding any immunity to which the defendant may be entitled, plaintiff argues that the defendant has waived such immunity by entering a lease which "contemplated adjudication of any dispute in the local and federal courts." Pl's Mot. to Reinstate at 2. Article 32 of the Convention governs waiver of diplomatic immunity, and provides in pertinent part: 

1. The immunity from jurisdiction of diplomatic agents ... may be waived *by the sending State.*

2. Waiver must always be *express.*

(emphasis supplied). Dupuis thus has no authority to waive his immunity from civil jurisdiction; that is the prerogative of the government of Canada, which, to date, has declined to do so.[9] Moreover, there are no provisions in the lease which expressly address—let alone purport to waive—the diplomatic immunity otherwise enjoyed by Dupuis. Plaintiff's "waiver of immunity" theory thus cannot be reconciled with the Convention.[10]

In light of the foregoing, an accompanying Order shall vacate the Memorandum & Order of August 22, 1997, and deny plaintiff's Motion to Reinstate Complaint.

---

9. *See* August 6, 1997 State Department certification at 2 ("The Permanent Mission of Canada to the Organization of American States has further informed the Department of State that the Government of Canada does not waive Mr. Lionel Alain Dupuis's diplomatic immunity.").

The international Conference responsible for drafting the Convention also adopted a resolution which "recommends that the sending state should waive the immunity of members of its diplomatic mission in respect of civil claims of persons in the receiving state when this can be done without impeding the performance of the functions of the mission, and that, when immunity is not waived, the sending state should use its best endeavors to bring about a just settlement of the claims." *Restatement (Third) of Foreign Rela-*

## ORDER

For reasons stated in the accompanying Memorandum, it is this 18th day of December, 1997

ORDERED: the Memorandum & Order of August 22, 1997 (11–1) is hereby VACATED; and it is further

ORDERED: that plaintiff's Motion to Reinstate the Complaint (9–1) is DENIED; and it is further

ORDERED: that this matter is DISMISSED.

---

*tions* § 464 Rep. Note 14 (1986). However, waiver and settlement are remedies to be pursued through diplomatic, rather than judicial channels. *See* Grant V. McClanahan, *Diplomatic Immunity* 86 (1989) ("Where a citizen or a company has suffered damages and cannot get redress through litigation because of diplomatic immunity, the protocol office [of the State Department] makes itself available to both sides to seek a resolution of the problem.").

10. The cases cited by plaintiff in support of his "waiver of immunity" theory concern the Foreign Sovereign Immunities Act which—in contrast to the Convention—provides that a foreign state may waive its immunity "either explicitly or by implication." *See* 28 U.S.C. § 1605(a)(1).